# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**MICHAEL G. RUPPERT**
**JAIMIE L. CAIRNS**
Ruppert & Schaefer, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**RICHARD RANUCCI**
Indianapolis, Indiana

FILED

Mar 27 2012, 9:23 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LORRAINE (CARPENTER) MILLER, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1107-DR-663 |
| | ) | |
| KARL CARPENTER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Daniel J. Pfleging, Judge
The Honorable William P. Greenaway, Magistrate
Cause No. 29D02-0706-DR-687

**March 27, 2012**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Lorraine (Carpenter) Miller ("Mother") and Karl Carpenter ("Father") were previously married and have two children in common. The divorce decree, which incorporated the parties' settlement agreement, gave Mother sole legal custody and primary physical custody of the children. Father had parenting time for about 127 overnights per year, but took a parenting time credit of only ninety-eight overnights. About two years later, Father petitioned for joint legal custody, an increase in parenting time, and a decrease in child support. After a hearing, the trial court granted Father the requested relief. The decrease in child support was based on Mother's increase in income, Mother's decrease in child care costs, and an increase in the parenting time credit.

On appeal, Mother argues that the trial court erred by: (1) granting Father joint legal custody when the evidence did not support all the pertinent factors that must be considered; (2) modifying Father's parenting time to such an extent that it was a de facto modification of physical custody; and (3) decreasing Father's child support obligation when it should have imputed additional income to him and retained the agreed-upon parenting time credit of ninety-eight overnights. We agree with Mother that Father failed to show a substantial change in circumstances supporting a modification of legal custody and therefore reverse the trial court on that issue. However, we conclude that the trial court did not make a de facto modification of physical custody. To modify parenting time, only a showing of the children's best interests was required, and the evidence supports the trial court's conclusion that the modification was in the children's best interest. We also conclude that the trial court did not

2

abuse its discretion by concluding that evidence of imputed income was too speculative, that Father should receive a larger parenting time credit due to the increased number of overnights that he has with the children, and that his previous support obligation exceeds the Indiana Child Support Guidelines amount by more than 20%. Therefore, we affirm the trial court's order as to the parenting time and child support issues.

## Facts and Procedural History

Mother and Father have a ten-year-old daughter, K.C., and an eight-year-old son, X.C. Mother petitioned for dissolution in 2007. On November 26, 2008, the parties filed a settlement agreement, and on December 4, 2008, the trial court dissolved the marriage and incorporated the settlement agreement into its order. Pursuant to the settlement agreement, Mother had sole legal custody of the children and primary physical custody of the children. Father had the children on alternate weekends and overnight on Wednesdays. On Father's weekends, Father picked the children up from school on Friday, and Mother picked the children up on Sunday evenings. The parties agreed to follow the Indiana Parenting Time Guidelines for holidays and special occasions. Although she was not required to do so, Mother allowed Father to have the children on their spring break because it did not align with the spring break at the school where Mother works as a teacher. In calculating child support, the parties agreed that Father would receive credit for ninety-eight overnights, which was less than his actual number of overnights.

At the time of the dissolution, Father lived with his parents in Fishers and worked in Columbus, Indiana. Mother lived on the north side of Indianapolis and worked as a teacher.

On June 30, 2010, Mother filed notice that she was moving to the south side of Indianapolis due to her recent remarriage. In response, Father filed a "Motion for Modification of Legal Custody, Parenting Time and Child Support Orders." Appellant's App. at 36. The motion requested joint legal custody, Sunday overnights on Father's weekends, and a recalculation of child support.

Evidentiary hearings were held on April 14 and June 3, 2011. Father stated that he was not opposing Mother's relocation because it had only a negligible impact on his travel time. He testified that the settlement agreement entitled him to about 128 overnights; however, because Mother had given him some additional parenting time, he actually had the children for about 134 overnights per year. On Wednesdays, Father picks the children up from school, and he takes them directly to school on Thursday mornings because it is roughly on his way to work. Father uses the travel time to talk to the children about school. Father testified that he would do the same on Monday mornings if he were allowed to have Sunday overnights. Currently, Mother picks the children up on Sunday evenings, and on Monday mornings, the children's stepfather takes them to child care, and a bus picks them up from there.

Father testified that he felt like he was more stable, had better parenting skills, and had a stronger bond with the children than at the time of the settlement agreement. He felt that as the children were getting older, they needed more time with him. He felt that Sundays were "depressing," because of the anticipation of the children leaving for Mother's parenting time, and opined that "it would be better for the kids if they had a complete weekend in which they

can look forward to spending time with Dad from Friday up to Monday morning." Tr. at 35.

Father wanted joint legal custody because he felt like he was "out of the loop on some of the decisions that have been made," *id*. at 54, and he thought that "two heads are better than one." *Id*. at 55. Father felt that he did not get sufficient information about K.C.'s involvement in a special math program or about a surgery that X.C. had; however, Father conceded that he is already entitled to obtain the children's school and medical records. Father acknowledged that communication with Mother had initially been "rough," but he felt that it had improved. *Id*. He disagreed with Mother's contention that he was nonresponsive in that he felt that most of Mother's emails were simply informational and did not require a response.

Father testified that he lives with his parents, and he generally does not pay rent or contribute to the utilities or maintenance. He buys food for himself and the children and contributes to the purchase of household supplies such as laundry detergent.

Mother testified that in the past, she had allowed Father to have the children for their spring and fall breaks because her school's schedule did not match the children's. However, during the 2011-12 school year, her spring break will align with the children's. Mother felt that Father was unresponsive to her emails and that they argued over "very simple things," like paying for the children's recreational activities. *Id*. at 149. Mother testified that she thought income should be imputed to Father because he does not pay for housing. She also asserted that Father's credit for ninety-eight overnights instead of his actual number of overnights was a result of negotiation. She testified that a large portion of her income

5

currently goes toward paying attorney fees, and her new husband pays their mortgage.

On June 27, 2011, the trial court issued its order.  As to legal custody, the court stated that it considered the factors set forth in Indiana Code Section 31-17-2-15 (titled "Joint legal custody; matters considered in making award"), although it did not make specific findings regarding each factor.  The court found that the parties were able to cooperate and communicate in a non-hostile manner and that the children would benefit from both parents participating in decision making.  Concluding that it was in the best interests of the children, the court granted Father joint legal custody.

The court also granted Father overnights on his Sundays.  It noted Father's asserted reasons for increasing parenting time:  Father's "closer bonds with the children, their advancing maturity and greater Sunday continuity and cheer without exchange."  Appellant's App. at 11.  The court found that the children benefit from their time with Father and that it was in the children's best interests to extend Father's weekend parenting time.

Due to Father's increased parenting time, the court concluded that he should get credit for 134 overnights.  The court declined to impute income to Father for his lack of housing costs or to Mother for her lack of summer employment, finding that the evidence presented on the issue was too speculative.  Factoring in Mother's increased pay and decreased child care expenses, the court concluded that Father's weekly support obligation should be reduced from $258 to $143.35.  Mother now appeals.

## Discussion and Decision

On appeal, Mother raises two issues, which we restate as the following four: (1) whether the trial court abused its discretion by modifying legal custody; (2) whether the trial court made a de facto modification of physical custody; (3) whether the trial court abused its discretion by modifying Father's parenting time; and (4) whether the trial court abused its discretion by decreasing Father's child support obligation.

Modifications of child custody, parenting time, and child support are all reviewed for abuse of discretion. *See Werner v. Werner*, 946 N.E.2d 1233, 1244 (Ind. Ct. App. 2011) (custody), *trans. denied*; *Tamasy v. Kovacs*, 929 N.E.2d 820, 837 (Ind. Ct. App. 2010) (parenting time); *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006) (child support). We grant latitude and deference to our trial judges in family law matters. *Werner*, 946 N.E.2d at 1244. We consider the only the evidence favorable to the judgment and the inferences flowing therefrom. *Id*. We do not reweigh the evidence or assess witness credibility. *Id*.

The trial court entered findings of fact and conclusions thereon. Pursuant to Indiana Trial Rule 52(A), we do not "set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." Where, as here, the findings and conclusions are entered sua sponte, "the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the trial court has not found, and we may affirm a general

judgment on any theory supported by the evidence adduced at trial." *Sexton v. Sedlak*, 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied*.

At the outset, we note that Mother argues that her relocation did not justify any of the modifications. *See* Ind. Code § 31-17-2.2-1 (listing factors to consider when modifying custody based on a parent's relocation). Father conceded at the hearing that Mother's relocation did not have any significant impact on him or his relationship with the children and reaffirmed several times that he was not contesting Mother's relocation. The trial court's order does not appear to rely on Mother's relocation as a basis for modifying custody. Therefore, we will not address Mother's arguments concerning Indiana Code Section 31-17-2.2-1.

## I. Legal Custody

In *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1259-60 (Ind. Ct. App. 2010), we held that the trial court must consider three statutes when modifying legal custody: Indiana Code Sections 31-17-2-8, -15, and -21. Indiana Code Section 31-17-2-21 states in relevant part:

> (a) The court may not modify a child custody order unless:
>
> (1) the modification is in the best interests of the child; and
>
> (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 … of this chapter.
>
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Indiana Code Section 13-17-2-8 contains factors that the trial court must consider when making an initial custody order, namely:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

> (A) the child's parent or parents;
>
> (B) the child's sibling; and
>
> (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

> (A) home;
>
> (B) school; and
>
> (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian….

Finally, Indiana Code Section 31-17-2-15 contains factors that are pertinent specifically to joint legal custody:

> (1) the fitness and suitability of each of the persons awarded joint custody;
>
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
>
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

9

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

> (A) live in close proximity to each other; and

> (B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

We agree with Mother that Father failed to show that there was a substantial change in the pertinent factors such that a change in legal custody was warranted. At the hearing, Father opined that he was more stable, had more child-rearing experience, and had a stronger bond with the children than at the time of the settlement agreement. Although Father testified that he felt "out of the loop," he acknowledged that he had access to the children's medical and school records, and he did not dispute that Mother regularly emails him with information about the children. Tr. at 54. Father's testimony on these points was largely conclusory and self-serving, and it does not support a conclusion that there has been a substantial change that would justify a modification of legal custody. Therefore, we reverse the trial court's order as it pertains to legal custody.

## II. Physical Custody

As noted above, pursuant to Indiana Code Section 31-17-2-21, a modification of physical custody requires a showing of the child's best interests and a substantial change in one of the factors listed in Indiana Code Section 31-17-2-8. However, parenting time may be modified "whenever modification would serve the best interests of the child." Ind. Code §

10

31-17-4-2. Thus, unlike a modification of physical custody, a modification of parenting time does not require a showing of a substantial change.

Mother argues that the modification of Father's parenting time was so substantial that it amounted to a de facto modification of physical custody. In support, she cites *Julie C*. In that case, the mother initially had primary physical custody of the children. The trial court subsequently modified the father's parenting time so that the parents had equal time with the children. On appeal, mother argued that this was a de facto modification of physical custody. We agreed, holding that "when the trial court increased Father's parenting time to seven overnight stays during any given two-week period, it ordered a *de facto* modification of custody to joint physical custody." *Julie C.*, 924 N.E.2d at 1256. Nevertheless, we upheld the modification because the evidence in the record supported a conclusion that there had been a substantial change in circumstances. *Id*. at 1258-59.

Mother acknowledges that this is not a case where the parties have equal time with the children. Instead, she argues that *Julie C.* stands for the proposition that any substantial increase in parenting time is, in essence, a modification of physical custody. Mother asserts that, pursuant to the modified order, Father is entitled to as many as 168 overnights, i.e., 46% of overnights. It is not clear how Mother calculated these numbers, but it appears that she included the extra holiday time that she had previously allowed Father to have. Neither the original nor the modified order entitles Father to this time, and Mother's testimony indicates that she does not intend to allow Father to have this additional time in the future so long as her spring break aligns with the children's. Father testified that he was originally entitled to

11

128 days, i.e., about 35% of overnights, and he asserts that the modified order allows him 147 overnights, i.e., about 40% of overnights.[1]

Mother has not cited any authority defining "joint physical custody." As *Julie C.* involved an equal division of parenting time, the opinion does not suggest what, if anything, other than a fifty-fifty split constitutes joint physical custody. We agree with Mother that the statute governing modification of parenting time should not be used as an end run around the statutory requirement of showing a substantial change in circumstances for a modification of physical custody. However, absent any clear authority to support her argument, Mother has not persuaded us that modification of Father's parenting time from roughly 35% to 40% of overnights is so substantial or so close to an even division of parenting time that it should be viewed as a de facto modification of physical custody.[2]

### III. Parenting Time

As discussed above, parenting time may be modified "whenever modification would serve the best interests of the child." Ind. Code § 31-17-4-2. The evidence favorable to the

---

[1] Father explains his calculations as follows:

The [Original Divorce] Decree had granted Father 128 annual overnight stays, which Father calculated by multiplying one hundred and eighty-five school nights by twenty percent (two of ten – Wednesdays), and adding this total to his half of non-school overnights [(185 × .2) + (180 × .5) = 127]. The Order of June 27, 2011, extended Father's alternate Sunday parenting time (school weeks only since alternate weekends are trumped by vacation and holiday parenting provisions) to overnights, adding 18 to 19 overnights per year, for a total of about 147 annual overnight stays.

Appellee's Br. at 16 (internal citation omitted).

[2] Given the frequency with which child custody issues arise, it would be ideal if the relevant statutes defined key terms and indicated more clearly how they should be harmonized.

judgment is that if Father has the children overnight on his Sundays, he would take them directly to school on Monday mornings and use the travel time to talk to them about school. Currently, Mother picks the children up on Sunday evening, the children's stepfather takes them to child care on Monday morning, and the children are picked up by the bus at child care. Therefore, if the children stay overnight with Father, they can spend more time in the care of a parent and less time traveling because they would not have to go to child care or ride a bus. This evidence supports the trial court's conclusion that extending Father's parenting time is in the children's best interests.[3]

### IV. Child Support

As noted above, child support orders are reviewed for an abuse of discretion. *Kondamuri*, 852 N.E.2d at 949. "A trial court's calculation of a child support obligation under the child support guidelines is presumptively valid." *Id.* As the party petitioning for modification, Father bore the burden of proof. *Weiss v. Frick*, 693 N.E.2d 588, 590 (Ind. Ct. App. 1998), *trans. denied.* Mother makes three arguments concerning child support: (A) the trial court erred by not imputing income to Father; (B) the trial court erred by increasing the number of overnights for which Father gets credit; and (C) there was not a substantial change warranting modification.

### A. Imputed Income

---

[3] Mother contends that the trial court failed to explain the deviation from the Parenting Time Guidelines in writing. *See* Ind. Parenting Time Guidelines, Preamble, § 2 ("Any deviation from these Guidelines by either the parties or the court must be accompanied by a written explanation why the deviation is necessary or appropriate in the case."). On the contrary, the court specifically found that the children would have more continuity, that the arrangement would not result in additional travel time for the children, that the children benefit from time with Father, and that the modification was in the children's best interests.

13

The Child Support Guidelines define "weekly gross income" as income of each parent "from any source," subject to a few exclusions not applicable here. Child Support Guideline 3(A)(1). The Child Support Guidelines provide a non-exhaustive list of income sources, including gifts. *Id.*

> Whether or not income should be imputed to a parent whose living expenses have been substantially reduced due to financial resources other than the parent's own earning capabilities is also a fact-sensitive situation requiring careful consideration of the evidence in each case. It may be inappropriate to include as gross income occasional gifts received. However, regular and continuing payments made by a family member, subsequent spouse, roommate or live-in friend that reduce the parent's costs for rent, utilities, or groceries, may be the basis for imputing income. The marriage of a parent to a spouse with sufficient affluence to obviate the necessity for the parent to work may give rise to a situation where either potential income or imputed income or both should be considered in arriving at gross income.

Ind. Child Support Guideline 3(A), cmt. 2(d).

The evidence showed that Father lives with his parents and does not pay for rent, maintenance, or utilities. Mother requested that $1335.33 per week be imputed to Father for these living expenses that he does not pay. However, Mother presented no evidence of the value of the expenses that Father's parents pay for him. Mother's figure of $1335.33 appears to be completely arbitrary, and she has not persuaded us that the trial court abused its discretion by finding that the evidence was too speculative to impute income to either party.

## B. Parenting Time Credit

The trial court increased Father's parenting time credit from ninety-eight overnights to 134. Mother argues that this was an abuse of discretion because Father has no duplicated

14

expenses. The commentary to Child Support Guideline 6 explains the rationale for granting a parenting time credit to the noncustodial parent:

> An examination of the costs associated with the sharing of parenting time reveals two types of expenses are incurred by both parents, transferred and duplicated expenses.…
>
> *Transferred Expenses*. This type of expense is incurred only when the child(ren) reside(s) with a parent and these expenses are "transferred" with the child(ren) as they move from one parent's residence to the other. Examples of this type of expense are food and the major portion of spending for transportation. When spending is transferred from one parent to the other parent, the other parent should be given a credit against that parent's child support obligation since this type of expense is included in the support calculation schedules. When parents equally share in the parenting, an assumption is made that 35% of the Basic Child Support Obligation reflects "transferred" expenses. The amount of expenses transferred from one parent to the other will depend upon the number of overnights the child(ren) spend(s) with each parent.
>
> *Duplicated Fixed Expenses*. This type of expense is incurred when two households are maintained for the child(ren). An example of this type of expense is shelter costs which are not transferred when the child(ren) move(s) from one parent's residence to the other but remain fixed in each parent's household and represent duplicated expenditures. The fixed expense of the parent who has primary physical custody is included in the Guideline support schedules. However, the fixed expense of the other parent is not included in the support schedules but represents an increase in the total cost of raising the child(ren) attributed to the parenting time plan. Both parents should share in these additional costs.

Child Support Guideline 6, cmt.

The parenting time credit represents the total of transferred and duplicated expenses by the noncustodial parent as a percentage of the weekly basic child support obligation. *Id*. The percentage varies with the number of overnights. For 131 to 135 overnights, the percentage is .544; duplicated expenses account for .417 and transferred expenses account

15

for .127. Child Support Guideline 6, Table PT. Using these percentages, Father's parenting time credit is $143.49.[4]

Mother concedes that Father has transferred expenses, but argues that he has no duplicated expenses because he does not pay for housing. Thus, she argues that the parenting time credit should be calculated using 0% for duplicated expenses and .127 for transferred expenses, resulting in a credit of $52.45. *See* Appellant's Br. at 38 (showing a Parenting Time Credit Worksheet using these figures). Mother argues that using .544, as the trial court did, results in a windfall to Father.

First, we note that the trial court did not give Father a full parenting time credit because it used 134 overnights when he really gets 147 (or more, according to Mother). Using 147 overnights would have resulted in a credit of $160.61.[5] Second, the evidence showed that both parents have their housing subsidized by other adults. Neither Father nor Mother pays a mortgage or rent, yet Mother's housing expenses are factored into the basic support obligation. *See* Child Support Guideline 6, cmt. (duplicated fixed expenses include housing, and the fixed expenses of the parent with primary physical custody are "included in the Guideline support schedules"). On the record before us, Mother has not shown that the already reduced parenting time credit results in a windfall for Father. Thus, she has not persuaded us that the trial court abused its discretion in calculating the parenting time credit.

---

[4] The trial court's order did not include a Parenting Time Credit Worksheet; however, Mother recreated a worksheet in her brief. Appellant's Br. at 37.

[5] This figure is reached by using Mother's Parenting Time Credit Worksheet and substituting the applicable percentages from Table PT for 147 overnights. If Mother's assertion that Father gets 168 overnights per year is correct, the Parenting Time Credit Worksheet would result in a credit of $173.69.

## C. Substantial Change

A child support order may be modified:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

Ind. Code § 31-16-8-1(b).

Pursuant to the settlement agreement, Father paid $258 per week in child support. Using Mother's increased income, Mother's decreased child care costs, and Father's increased parenting time credit, the court found that the Child Support Guidelines would result in a weekly child support obligation of $143.35. Because $258 deviates from the Guidelines amount by more than 20% and the child support order had been in place for more than a year, the trial court found that the criteria of Indiana Code Section 31-16-8-1(b)(2) had been met and reduced Father's weekly obligation to $143.35.

Mother does not dispute that her income has increased and her child care costs have decreased. However, she argues that Father's obligation cannot be decreased because he agreed to pay an amount in excess of the Guidelines. Mother relies on *Hay v. Hay*, 730 N.E.2d 787 (Ind. Ct. App. 2000). In *Hay,* the father initially agreed to pay the children's college tuition. Once the oldest child reached college age, the father petitioned for a

17

modification of child support, asking the trial court to determine child support based on the Post-Secondary Education Worksheet included in the Guidelines. The father alleged that the child's intent to enroll in college was a substantial change in circumstances warranting modification. The trial court denied the father's petition, and he appealed.

We held that the child's enrollment in college was not a substantial change because her enrollment in college was contemplated by the parties as evidenced by the father's agreement to pay for college. *Id*. at 793. Thus, child support could not be modified pursuant to Indiana Code Section 31-16-8-1(b)(1). *Id*. Alternatively, the father argued that child support could be modified pursuant to subsection (b)(2) due to a 20% deviation. The *Hay* panel found that the father had waived this argument because he had not made that argument to the trial court. *Id*. at 794, *disagreed with by Holzleiter v. Holzleiter*, 944 N.E.23d 502, 506 (Ind. Ct. App. 2011). In dicta, the *Hay* panel stated that "when a parent has agreed to pay support in excess of the guidelines and which could not be ordered by a trial court, that parent must show a substantial change in circumstances independent of the twenty percent deviation to justify modification." *Hay*, 730 N.E.2d at 795, *disagreed with by In re Marriage of Kraft*, 868 N.E.2d 1181, 1189 (Ind. Ct. App. 2007).

Mother argues that because Father agreed to receive credit for ninety-eight overnights when he would have been entitled to more, he cannot rely on an increase in the number of overnights to establish a 20% deviation, but must show a substantial change in circumstances. Even if the dicta in *Hay* is correct, we do not believe that its rationale is applicable here. In *Hay*, the parties' agreement contemplated that the children would attend

18

college; thus, the panel expressed concern that the father was simply attempting to back out of his agreement after the mere passage of time. In this case, the parties negotiated both the parenting time credit and Father's actual number of overnights; in other words, the credit for ninety-eight overnights was premised on Father receiving about 127 actual overnights. Nothing in the parties' agreement contemplates that Father would continue to receive credit for ninety-eight overnights regardless of any parenting time modifications that might occur. This is not a situation where a parent is merely attempting to circumvent an agreement; Father's overnights have been increased to about 147 based on the children's best interests. It is likewise in the children's best interests to adjust Father's child support obligation to reflect this new reality. *See In re Kraft*, 868 N.E.2d at 1188-89 (disagreeing with *Hay*, the panel noted that the statutory scheme is intended to promote the best interests of children). The increased credit is not to reward Father, but to provide the children with continuity in their standard of living. *See* Ind. Child Support Guideline 1 (the Guidelines attempt to give children the standard of living they would have enjoyed had the marriage not been dissolved); *Bussert v. Bussert*, 677 N.E.2d 68, 71 (Ind. Ct. App. 1997) (child support payments are for the benefit of the child and should not be used to leverage one parent's standard of living at the expense of the other), *trans. denied*. Therefore, we conclude that the trial court did not abuse its discretion by modifying Father's child support obligation pursuant to Indiana Code Section 31-16-8-1(b)(2) rather than Subsection (b)(1).

**CONCLUSION**

The evidence does not support a conclusion that there was a substantial change in circumstances justifying a modification of legal custody. Therefore, we reverse the trial court's grant of joint legal custody to Father. Contrary to Mother's argument, the trial court did not make a de facto modification of physical custody, but only a modification of parenting time. A modification of parenting time requires only a showing of the children's best interest, which Father met in this case. As to child support, the trial court did not abuse its discretion by finding the evidence of imputed income too speculative or by increasing Father's parenting time credit. Because more than a year has passed since the original support order and Father's obligation deviated from the Child Support Guidelines by more than 20%, the trial court did not err by reducing Father's child support obligation. Therefore, we affirm the trial court's order as to parenting time and child support.

Affirmed in part and reversed in part.

MAY, J., and BROWN, J., concur.