## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 26 2017, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darlene R. Seymour
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Denise F. Hayden
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Marriage of A.V., Sr., <br> *Appellant-Petitioner,* <br><br> v. <br><br> L.V., <br> *Appellee-Respondent* | June 26, 2017 <br><br> Court of Appeals Case No. <br> 49A02-1609-DR-2217 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James A. Joven, Judge <br><br> The Honorable Kimberly D. Mattingly, Magistrate <br><br> Trial Court Cause No. <br> 49D13-1201-DR-2551 |

**Crone, Judge.**

## Case Summary

A.V., Sr. ("Father"), appeals the trial court's order ("Order") granting the petition for modification of dissolution decree filed by L.V. ("Mother"). Father raises one issue, which we restate as whether the trial court abused its discretion in granting Mother primary physical custody of Al.V. ("Daughter"). Finding no abuse of discretion, we affirm.

## Facts and Procedural History

In April 2014, Mother and Father's marriage was dissolved.[1] Pursuant to the dissolution decree, Mother and Father were granted joint legal custody of their two minor children, fifteen-year-old An.V. ("Son") and ten-year-old Daughter, and Father was granted primary physical custody. Parenting time was provided as follows:

> The children shall alternate weekends with each parent from Friday after school … until Monday morning with that parent being responsible for transporting the children to school. [Mother] should care for the children during times Monday through Thursday when [Father] works, whether a normal or overtime shift. During weeks when [Father] works only one day during this time frame, [Mother] should have the children for an additional overnight during the week for a total of two midweek overnights per week.

---

[1] Father's statement of the facts is not set forth in accordance with our standard of review and predominately consists of Father's testimony in contravention of Indiana Appellate Rule 46(A)(6)(b) and -(c).

Appellant's App. Vol. 2 at 20. Mother and Father's oldest child, who was three weeks from turning nineteen, was found to be emancipated. Father was awarded the marital residence in Indianapolis and was required to refinance or sell it within one year of the decree to remove Mother's name from the mortgage. At the time of the dissolution, the children attended Warren Township schools. The dissolution decree provided that the "children should attend school from [Father's] home unless he chooses to relocate outside of the school district, at which time [Daughter] may attend school from [Mother's] school district with [Son] given the choice of completing his high school education at his current school or at a school in [Mother's] school district." *Id.*

[3] In July 2014, Father filed the first of three notices of intent to relocate. In his notice, Father stated that he intended to relocate to an apartment in Greenwood, which was in the Center Grove school district and would enable the children to attend better schools. *Id.* at 24. He also stated that he needed to vacate the marital residence to make repairs so that he could comply with the dissolution decree. Father's proposed new apartment was approximately thirty miles from Mother's residence and ten miles from her place of employment.

[4] Mother filed a petition to modify legal custody and a restraining order, arguing that Father had already begun to unilaterally withdraw the children from their current schools and enroll them in Center Grove schools, his action was contrary to the provisions of the dissolution decree and not in the children's best interests, and her ability to transport the children to Center Grove schools would be unreasonably difficult given that she exercised equalized parenting

time. *Id*. at 27-28. She requested that she be granted legal custody of the children and that Father be restrained from withdrawing the children from their current schools. Following a hearing, in August 2014, the trial court ordered that the parties would continue to share joint legal custody of their minor children, Father would continue to have primary physical custody, and Father would be permitted to relocate to Greenwood and enroll the children in Center Grove schools. *Id*. at 31.

[5] In December 2014, Father filed his second notice of intent to relocate. He stated that he intended to move back to the marital residence due to financial difficulties but the children would remain in their current schools. *Id*. at 33. Mother did not object. In June 2015, Mother filed a petition for modification of custody, arguing that a substantial and continuing change of circumstances had occurred in that Son felt depressed at his current school and wanted to return to Warren Central High School. *Id*. at 36. She requested that she be granted primary physical custody of both children so that they would not be separated and on different parenting time schedules. *Id*. at 37. In August 2015, following a hearing, the trial court denied Mother's petition for modification of custody.

[6] In April 2016, Father filed his third notice of intent to relocate, stating that he intended to move to Bargersville "to reestablish residency in the children's current school district, providing stability and support in their educational and social circles." *Id*. at 40. In June 2016, Mother filed an objection to Father's intent to relocate contending that it was not in the children's best interests. *Id*. at 43. Mother also filed a petition for modification of dissolution decree, the

petition from which this appeal stems, alleging that a substantial change of circumstances had occurred such that the dissolution decree should be modified with respect to child custody. The alleged substantial change of circumstances included the following: Son was going to turn eighteen, would graduate from high school in May 2016, and had been accepted to a college in northern Indiana; long-distance driving to Daughter's school was causing undue fatigue and stress on the child; Daughter would be able to attend Washington Township schools; there was a great deal of animosity between Son and Father; and both children preferred to reside with Mother. *Id*. at 44-45.

[7] In June and August 2016, the trial court held a hearing on Mother's objection to Father's relocation and her petition for modification of dissolution decree. In September 2016, the trial court issued its Order granting Mother primary physical custody of Daughter. The Order provides in relevant part,

> The Court specifically finds that there is a substantial change of circumstances in that [Son] no longer resides with Father and Father insists on leaving [Daughter], age thirteen (13) alone when he works overnights. This makes the current arrangements unreasonable.[2] Father has also refused to alter his and [Daughter's] eating habits, despite being aware of her weight issues and has damaged his relationships with the parties' two oldest children to the point where they are strained, at best.

---

[2] Indiana law no longer requires that a substantial change in circumstances make the current arrangement unreasonable before custody may be modified. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1258 (Ind. Ct. App. 2010) (explaining that custody modification statute was amended in 1994 to remove requirement of unreasonableness, and stating, "Thus, a petitioner is no longer required to show that an existing custody order is unreasonable before a court will modify it.").

Appealed Order at 1. This appeal ensued.

# Discussion and Decision

[8] Father challenges the trial court's decision to grant Mother primary physical custody of Daughter. We review custody modifications for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). An abuse of discretion occurs "when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *L.C. v. T.M.*, 996 N.E.2d 403, 407 (Ind. Ct. App. 2013). When reviewing a trial court's decision regarding custody modification, we neither reweigh the evidence nor judge the credibility of the witnesses. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). We consider only the evidence favorable to the judgment and any reasonable inferences arising therefrom. *Id*. In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody should be altered. *Kirk*, 770 N.E.2d at 307.

[9] The trial court's Order contains one specific finding.

> When the trial court enters findings sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. The specific findings will not be set aside unless they are clearly erroneous, and we will affirm the general judgment on any legal theory supported by the evidence. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In reviewing the trial court's findings, we neither

reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider only the evidence and reasonable inferences drawn therefrom that support the findings.

*Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1255-56 (Ind. Ct. App. 2010) (citations omitted).

[10] At the outset, we note that Father bases much of his challenge to the trial court's Order on the relocation statute, Indiana Code Section 31-17-2.2-5, which provides that the relocating parent is required to prove that the proposed relocation is made in good faith and for a legitimate reason and then the nonrelocating parent is required to show that the proposed relocation is not in the child's best interests. Although Mother filed an objection to Father's April 2016 notice of intent to relocate, the trial court's sole finding is clearly not based on the relocation. Rather, Mother filed an independent petition for modification of dissolution decree based solely on the general modification statute, Indiana Code Section 31-17-2-21, and the trial court's finding is unmistakably based on that statute. Therefore, the proper analysis of the trial court's decision is pursuant to Section 31-17-2-21. Given that both statutes require consideration of the child's best interests, Father's arguments relating to Daughter's best interests are relevant to our review under Section 31-17-2-21, and therefore we will consider them.

[11] Section 31-17-2-21 provides that the trial court "may *not* modify a child custody order unless: (1) modification is in the best interests of the child; and (2) there is a substantial change in one or more of the factors that the court may consider

under section 8." (Emphasis added.) The factors in Section 31-17-2-8 include, among other things, the child's age and sex; the parents' wishes; the child's wishes, with the wishes of children fourteen years or older being given more weight; the child's relationship with parents, siblings, and any other person affecting the child's best interests; the child's adjustment to home, school, and the community; and the mental and physical health of all individuals involved. Also, in determining whether to modify a child custody order, "the court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8." Ind. Code § 31-17-2-21(c).

[12] Father first argues that claim preclusion bars litigation of Mother's June 2016 petition for modification of dissolution decree. Claim preclusion, a branch of res judicata, "applies where a final judgment on the merits has been rendered and acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *Angelopoulos v. Angelopoulos*, 2 N.E.3d 688, 696 (Ind. Ct. App. 2013), *trans. denied* (2014).

> In order for a claim to be precluded under the doctrine of res judicata, the following four requirements must be satisfied: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies. …. In determining whether the doctrine should apply, it is helpful to

inquire *whether identical evidence will support the issues involved in both actions.*

*Afolabi v. Atl. Mortg. & Inv. Corp.*, 849 N.E.2d 1170, 1173 (Ind. Ct. App. 2006) (citations omitted) (emphasis added).

[13] Father contends that the trial court already heard and rejected identical arguments at the hearing on Mother's June 2015 petition to modify custody. We observe that a year had passed between the hearing held on Mother's June 2015 petition and the hearing on Mother's June 2016 petition. At the hearing on the June 2016 petition, the trial court specifically stated that the law prohibited consideration of events that occurred before modification was last considered. 8/26/16 Tr. at 44; *See* Ind. Code § 31-17-2-21(c). Circumstances can very easily change over the course of a year. In fact, the trial court found that they had. Where new facts exist upon which the new claim is based, the matter now in issue cannot have been determined in the former action. We conclude that claim preclusion does not bar Mother from litigating the arguments in her June 2016 petition for modification of dissolution decree. *See Afolabi*, 849 N.E.2d at 1175 (concluding that where facts necessary to establish default in first foreclosure action were different from facts necessary to establish default in second foreclosure action, res judicata did not apply to bar second action).

[14] Next, Father asserts that Mother failed to carry her burden to establish that modification of child custody was warranted. Pursuant to Section 31-17-2-21, the trial court found that a substantial change in circumstances had occurred

because Son no longer lives at home and Father "insists" on leaving Daughter alone when he works overnights. Appealed Order at 1. In addition, by granting Mother's request for primary physical custody, the trial court implicitly found that under the circumstances, it was not in Daughter's best interests to be left home alone at Father's apartment while he was working overnight. Our review of the record leaves us confident that the trial court did not abuse its discretion.

[15] The evidence favorable to the trial court's decision shows that Son has graduated from high school, has started college at St. Joseph's College in Rensselaer, and no longer lives with Father. As of the first day of the hearing in June 2016, Daughter was twelve years old and had just finished seventh grade and would turn thirteen in July. Father's employment frequently requires him to work twenty-four-hour shifts, and he leaves Daughter alone overnight while he is working. 6/24/16 Tr. at 22-23. In early June, Father moved to the Bargersville apartment. Mother testified that she did not think that Daughter knew anyone near their new apartment, and there is no evidence that Daughter did know anyone nearby. That day, Mother had gone to Daughter's softball game, and Daughter had an overnight bag because she expected to go home with Mother. However, Father insisted that Mother bring Daughter to the empty apartment in Bargersville. Mother dropped Daughter off at the empty apartment against her better judgment because Father threatened legal action against her. 8/26/16 Tr. at 21-22.

[16] In another instance, Mother's parenting time was to end on a Sunday evening at 6:00 p.m., and she learned that Father would be working overnight. Because he was working, she asked him if she could keep Daughter until he got off work the next morning. *Id*. at 11-12. Father texted Mother that she was to take Daughter to his apartment or he would see Mother in court, that Mother was interfering with his parenting time, and that if she did not bring Daughter to the apartment, he was going to send commercial transportation for Daughter. *Id*. at 12. Mother texted Father that she did not feel comfortable with Daughter being alone overnight. Father agreed to meet Mother at a McDonald's to pick up Daughter, after which he took her to the apartment and went back to work. *Id*. There were two or three other instances when Daughter stayed alone overnight, including one when another thirteen-year-old girl spent the night with her. Father testified that after speaking with other parents, he thinks that it is appropriate to allow a thirteen-year-old girl to spend the night alone and that if he retains custody he would continue to leave Daughter by herself on nights that he is working.[3] *Id*. at 83. Mother and Father had an agreement that Daughter would stay with Mother when Father worked during the week. Appellant's App. at 20; 6/24/16 Tr. at 27; Appellant's Reply Br. at 7.

[17] Father justifies his decision to leave Daughter alone overnight because other parents apparently believe that thirteen is an appropriate age to stay at home

---

[3] Father contends that he has left Daughter alone overnight only three times over the summer and that isolated acts do not warrant modification of custody. Appellant's Br. at 17. However, his testimony shows that this would not be an isolated act.

overnight, one night another thirteen-year-old stayed with Daughter, he works only twenty minutes away, and he lives in a safe neighborhood. He argues that a difference in opinion on this question is insufficient to justify a change in custody. The evidence shows that Father ignored Mother's concerns and their prior agreement, insisted that Daughter remain alone in the apartment rather than stay overnight with Mother, and threatened to take Mother to court. Father offers no reasonable justification for refusing to allow Daughter to stay with Mother. "[I]n custody disputes, the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters. The trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony; therefore, its decision receives considerable deference in an appellate court." *Trost-Steffen v. Steffen*, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002) (citations and quotation marks omitted), *trans. denied*. Father's argument is merely a request to reweigh the evidence and judge witness credibility, which we must decline. *See Miller*, 965 N.E.2d at 108. We conclude that the evidence supports the trial court's finding that Son's absence from Father's home and Father's insistence that thirteen-year-old Daughter spend the night alone constitutes a substantial change in circumstances and is not in Daughter's best interests.

[18] Father also contends that the evidence does not support the trial court's implicit finding that Daughter has a weight issue and that his eating habits are contributing to it. The evidence shows that Mother took Daughter to her yearly physical in July 2016 and Daughter's doctor was concerned about her weight

and discussed healthy eating habits with her. Daughter was thirty-five pounds over her ideal weight. 8/26/16 Tr. at 10. She has developed stretch marks from her rapid weight gain. 6/24/16 Tr. at 21-22. Mother prepares home-cooked meals almost every night with vegetables and fruits. 8/26/16 Tr. at 10. Mother and Daughter go for walks, often walking the dogs together. Although Father participates in active pursuits with Daughter, such as going white-water rafting and mountain biking while on vacation, Father could not remember the last time he prepared a home-cooked meal. Father testified that they "do not cook much at home" and they usually get takeout, which Father described as pizza, steak, vegetables, Asian food, Chinese food, and Subway sandwiches. *Id*. at 89-90. Again, Father's arguments are invitations to reweigh evidence and judge witness credibility, which we cannot not do. *See Miller*, 965 N.E.2d at 108. We conclude that the evidence supports the trial court's finding regarding Daughter's weight and diet.

[19] Father does not contest the trial court's finding that his relationships with the two older children are strained, but he argues that it should have no bearing on custody modification. We disagree. Among the factors that are relevant to a child's best interests are the child's relationships to siblings. Ind. Code § 31-17-2-8. The record shows that Father's relationship with Son is very troubled,[4] and the strain in their relationship casts a dark shadow on Daughter and Son's ability to maintain their relationship.

---

[4] A significant amount of testimony at the hearing was directed to the clashes between Father and Son, and the trial court's finding that their relationship is strained appears to be an understatement.

[20] Finally, Father asserts that changing custody is not in Daughter's best interests because she has been doing well academically in her current school and has made friends at the school. Father notes that if custody is modified Daughter will have to change schools, which would constitute a serious disruption in her life, and a change in custody for this reason alone is not in Daughter's best interests. The impact of changing schools will vary depending on the child and the child's circumstances and standing alone is not determinative of whether a change in custody is in a child's best interests. The trial court heard evidence on multiple factors of Daughter's life and found that it was in her best interests to be in the primary custody of her Mother. We cannot say that the trial court abused its discretion in granting Mother primary physical custody of Daughter. Therefore, we affirm.

[21] Affirmed.

Baker, J., and Barnes, J., concur.