FILED

Nov 22 2023, 8:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Rachelle N. Ponist
Morgan B. Brading
Nicholas Andre
Harshman Ponist Smith & Rayl LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Betsy Sommers
Coots, Henke & Wheeler, P.C.
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jamie Marie Russell,

*Appellant-Petitioner,*

v.

Leonard Alan Russell,

*Appellee-Respondent.*

November 22, 2023

Court of Appeals Case No.
23A-DC-578

Appeal from the Marion Superior
Court

The Honorable Marie L. Kern,
Magistrate

Trial Court Cause No.
49D14-2110-DC-9275

**Opinion by Judge Tavitas**
Judges Bailey and Kenworthy concur.

**Tavitas, Judge.**

## Case Summary

[1]     In this dissolution-of-marriage case, Jamie Marie Russell ("Mother") and

Leonard Alan Russell ("Father") entered into a partial mediated settlement

agreement ("Partial Mediated Agreement") in which they agreed to share "joint physical custody" of the parties' daughter, K.R. ("Daughter"). The trial court accepted and approved this agreement. The trial court, however, in both its subsequent provisional order and final dissolution decree, *sua sponte* addressed the issue of physical custody and awarded Mother less parenting time than that awarded to Father. Mother appeals and argues that, by granting unequal parenting time, the trial court violated the terms of the Partial Mediated Agreement. We agree with Mother that the Partial Mediated Agreement called for the parties to have equal parenting time and that the trial court's custody order awarded Mother less than equal parenting time. Accordingly, we reverse and remand.

## Issue

Mother presents one issue for our review, which we expand and restate as the following two:

    I.     Whether the parties' agreement to share "joint physical custody" means that the parties agreed to have equal parenting time with Daughter.

    II.    Whether trial court had authority to award Mother less parenting time than Father after the court accepted and approved of the Partial Mediated Agreement.

## Facts

Mother and Father married in July 2016. The marriage produced one child, Daughter, who was born in December 2017. Mother has an older daughter

from a prior relationship. Mother and Father separated, and, on October 29, 2021, Mother filed a petition to dissolve the marriage. On January 27 and 31, 2022, the trial court held provisional hearings.[1] At this time, Mother indicated her intention to move from the Indianapolis area to somewhere closer to Lafayette, where Mother was employed.

[4] On March 15, 2022, the parties participated in mediation and signed the Partial Mediated Agreement. The Partial Mediated Agreement resolved all issues regarding the marital estate and some of the issues regarding child custody. Regarding other child custody issues, however, the Partial Mediated Agreement provided:

> 12. **Parties agree to joint legal and physical custody of Minor Child.** Parties are not in agreement with regards to the primary residence of Minor Child or the long[-]term parenting time schedule, such matters are reserved for a final hearing on this matter.
>
> 13. In the interim, parents agree that they will engage in a "nesting" parenting time arrangement with each parent occupying the residence for three days/overnights in an alternating pattern. Each parent agrees to be absent from

---

[1] Both the parties and the trial court referred to the provisional hearings and provisional order as "preliminary hearings" and a "preliminary order." The Indiana Code generally uses the term "provisional hearing" and "provisional order," to refer to hearings and orders entered before the final dissolution decree. *See* Ind. Code § 31-15-4-13 ("The issuance of a **provisional** order is without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding."); Ind. Code § 31-15-4-14 ("A **provisional** order terminates when: (1) the final decree is entered subject to right of appeal; or (2) the petition for dissolution or legal separation is dismissed."); Ind. Code § 31-15-4-15 ("The terms of a **provisional** order may be revoked or modified before the final decree on a showing of the facts appropriate to revocation or modification."). *But see* Ind. Code § 31-15-4-12 (listing the options of the parties "[i]f the court grants a change of venue or change from the judge after the **preliminary** order of support, custody, or parenting time is issued") (emphases added).

the Marital Residence[] during the other parent's parenting time.

Appellant's App. Vol. II pp. 22-23 (emphasis added). On March 17, 2022, the trial court accepted and approved the Partial Mediated Agreement via an entry that stated the Agreement was "APPROVED AND SO ORDERED[.]" Appellant's App. Vol. II p. 25. Nothing in the Partial Mediated Agreement suggests that it was intended to be a temporary agreement that was modifiable by the trial court.

[5] On March 21, 2022, the trial court entered an order after the provisional hearing ("Provisional Order"), which provides in pertinent part:

> 5. **The Court finds it is in the child's best interests to order Father to have primary physical custody of the minor child, subject to Mother's parenting time.** The Court believes Father is more likely to facilitate parenting time with the minor child. The Court is also concerned by some of Mother's decisions as they reflect upon her judgment, such as discussing adult matters in front of the child, leaving the child in the care of a third party without communicating this information to Father and filming Father in front of the child.
>
> 6. Mother may exercise her parenting time in Clarks Hill, Indiana, or Lafayette, Indiana, should she so desire. If Mother exercises her Wednesday parenting time in Clarks Hill or Lafayette, the parties shall meet at an agreed upon halfway point at 8:00 p.m.
>
> 7. The parties shall divide holidays and special days per the Indiana Parenting Time Guidelines as amended January 1, 2022.

Appellant's App. Vol. II pp. 26-27 (emphasis added). The Provisional Order did not mention the Partial Mediated Agreement the court had approved only five days before the entry of the Provisional Order. A final hearing date was set for May 10, 2022.

[6] On April 18, 2022, Mother moved to continue the final hearing. The trial court granted this motion over Father's objection and set the final hearing for July 25, 2022. Before the final hearing, Mother moved to set aside the Provisional Order. Three days before the final hearing, Father moved to modify legal custody, and on the day of the final hearing, Mother also moved to modify legal custody.

[7] The trial court began the final hearing on July 25, 2022. At the hearing, Mother argued that the trial court should set aside the Provisional Order because the order was inconsistent with the provisions of the Partial Mediated Agreement regarding physical custody. The trial court was unable to complete the final hearing on that day and scheduled a second day of the hearing for September 26, 2022. On August 24, 2022, between the first and second day of the hearing, the trial court entered an Order on Interim Parenting Time. In this order, the trial court noted that Mother had not moved to Lafayette as previously indicated and, therefore, awarded Mother more parenting time than called for by the Guidelines. Specifically, the trial court ordered:

> The Court now orders Mother to have parenting time pursuant to the [Indiana Parenting Time Guidelines], plus an additional overnight on Sundays of the weekends she exercises parenting

time and a mid-week overnight every week. Mother shall be permitted to pick the child up from the childcare/daycare provider to begin her parenting time. The child shall be returned to a childcare provider at the conclusion of her parenting time.

*Id.* at 41. Following the September 26, 2022 continuation of the final hearing, the trial court took the matter under advisement.

[8] On February 13, 2023, the trial court issued the final dissolution decree. In its decree, the trial court denied Mother's motion to set aside the Provisional Order and awarded Father sole legal custody and primary physical custody of Daughter. The dissolution decree provided in relevant part:

> 9. The Partial Mediated Settlement Agreement resolved some child custody and parenting time issues.
>
> 10. **Per the Partial Mediated Settlement Agreement, the parties were to share joint legal and joint physical custody of the minor child.** The parties were not in agreement regarding the child's primary residence or the long-term parenting time schedule. The parties agreed that in the interim they would maintain a "nesting" parenting time arrangement in the home.
>
> * * * * *
>
> 18. The remaining issues before the Court are legal custody and parenting time. Case law and the Indiana Parenting Time Guidelines make it clear an equal division of parenting time

is not required for shared parenting time to be ordered by the Court.[2]

19. The minor child is a [five-year-old] little girl. Both parents want to have sole legal custody and greater parenting time than the other parent.

\* \* \* \* \*

31. **The Court finds it is in the child's best interests to order [Father] sole legal custody of the minor child.** [Father] is ordered to discuss major decisions about the child's education, health care, and religious training with [Mother] and consider her position, but [Father] shall have final decision-making authority.

\* \* \* \* \*

36. **Pursuant to the parties Partial Mediated Settlement Agreement, the parties are ordered to have joint physical custody of the child.**

37. [Mother] shall exercise parenting time with the minor child pursuant to the Indiana Parenting Time Guidelines, with an additional overnight on Sunday nights when she exercises weekend parenting time, as well as an overnight every week on her mid-week parenting time visit. . . .

Appellant's App. Vol. II pp. 45-53 (emphases added).[3] Mother now appeals.

---

[2] The trial court cited no authority for this rather bold statement. As explained below, our review of the case law suggests the opposite.

[3] The trial court noted in the decree that it ordered both parties to submit proposed orders and that Mother had submitted proposed findings of fact and conclusions thereon. The trial court further noted, however, that neither party requested such findings pursuant to Indiana Trial Rule 52 and declined to enter such findings sua sponte.

# Discussion and Decision

## *I. Standard of Review*

"'Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time.'" *Hahn-Weisz v. Johnson*, 189 N.E.3d 1136, 1141 (Ind. Ct. App. 2022) (quoting *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011)). Trial courts are "'enabled to assess credibility and character through both factual testimony and intuitive discernment', and, therefore, are 'in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.'" *Id.* (quoting *Best*, 941 N.E.2d at 502).

We also noted in *Hahn-Weiz* that:

> there is a well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters. Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. . . .

189 N.E.3d at 1141 (quoting *Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016)) (internal citations and quotations omitted). Accordingly, we review a trial court's custody determination for an abuse of discretion. *In re B.W.*, 17 N.E.3d 299, 307 (Ind. Ct. App. 2014).

## I. Joint Physical Custody

Mother notes that both parties agreed to share "joint physical custody" of Daughter in the Partial Mediated Agreement and argues that this term means equal parenting time.[4]  We agree.

The term "joint physical custody" does not appear in any statute or court rule that we are aware of, nor does the term appear in the Parenting Time Guidelines.  *See Miller v. Carpenter*, 965 N.E.2d 104, 113 (Ind. Ct. App. 2012) (noting that the appellant cited no authority defining the term "joint physical custody").  In *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010), we held that by increasing the father's parenting time to seven overnights in any given two-week period, the trial court had ordered a *de facto* modification of custody to "joint physical custody."  In *Miller*, another panel of this Court noted that our opinion in *Julie C.* "does not suggest what, if anything other than a fifty-fifty split constitutes joint physical custody."  *Miller,* 965 N.E.2d at 111. *See also* 10A Ind. Law Encyc. Divorce § 190 (noting that "[w]here divorced parents have joint physical custody of their children[,] each parent has custody of the children approximately 50% of the time.").  Thus, the term "joint physical custody" means that the parties will share equal parenting time.

---

[4] Prior to the final hearing, both parties filed motions seeking sole legal custody.  In the final dissolution decree, the trial court found that joint legal custody was not in Daughter's best interest and awarded sole legal custody of Daughter to Father.  Mother does not challenge the trial court's order regarding legal custody.  Accordingly, we do not address this issue.

[13] We find support for this proposition not only in the cases cited above, but also by analogy to the term "joint legal custody." This term is defined by Indiana Code Section 31-9-2-67, which states: "'Joint legal custody' . . . means that the persons awarded joint custody will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." When the parties have joint legal custody, neither party has any more say than the other party with regard to how the child (or children) are raised. Similarly, when parties agree to "joint physical custody," they mean that both parties will share equal parenting time.

[14] In the present case, it is especially apparent that the parties understood the term "joint physical custody," as used in the Partial Mediated Agreement, to mean equal parenting time. Indeed, after stating that the parties agreed to joint physical custody, the Partial Mediated Agreement then called for each parent to spend alternating periods of three days with Daughter.

## II. Mediated Agreement

[15] Mother also claims that the trial court was without authority to award her less parenting time than that awarded to Father. Mother notes that the trial court accepted and approved the Partial Mediated Agreement, which called for "joint physical custody," and that neither party petitioned the trial court to modify physical custody.

[16] As this Court explained in *Stone v. Stone*:

> "To promote the amicable settlements of disputes," parties in a
> dissolution action may enter written agreements that include
> provisions for child support and custody. Ind. Code § 31-15-2-
> 17(a). By statute, trial courts are not required to accept such
> agreements, and they may enter their own orders regarding
> dissolution matters, including child support and custody. I.C. §
> 31-15-2-17(b). Additionally, parties to a written settlement
> agreement may jointly request that a trial court enter a summary
> dissolution decree based upon the settlement without holding a
> final hearing. I.C. § 31-15-2-13. However, the statute provides
> that a trial court "may" enter such a decree; it is not required to
> do so upon the parties' request. *Id.*

991 N.E.2d 992, 999 (Ind. Ct. App. 2013), *aff'd on reh'g,* 4 N.E.3d 666.

[17] Mother argues that, once the trial court accepted the parties' Partial Mediated Agreement, both the trial court and the parties were bound by the terms of that agreement. Indiana courts encourage parties to negotiate agreements regarding custody and parental visits. *Tompa v. Tompa*, 867 N.E.2d 158, 165-66 (Ind. Ct. App. 2007) (citing *Keen v. Keen*, 629 N.E.2d 938, 941 (Ind. Ct. App. 1994)). The only requirement is that the agreement be in the child's best interest. *Id.* (citing *Keen,* 629 N.E.2d at 941). We have noted before that the Guidelines themselves agree that "'the best parenting plan is one created by parents which fulfills the unique needs of the child and the parents.'" *Id.* (quoting Parenting Time Guidelines, § II(A)).

[18] Although not all agreements between parties regarding child custody are automatically binding on the trial court, child custody agreements should

generally be given great weight. *Stone*, 991 N.E.2d at 999-1000 (quoting *Keen,* 629 N.E.2d at 940). As we explained in *Keen*:

> For that reason, when reasonable parents are capable of carrying out their agreement without court intervention, **the judge should defer to the parents' agreement and refrain from imposing his or her personal conception of a preferential arrangement.** One obvious exception is when an agreement might endanger the child's physical health or significantly impair his emotional development. We find another exception occurs when the agreement . . . is not in the best interests of the child because, among other things, it is ambiguous, unworkable, and almost certainly will demand further litigation.

629 N.E.2d at 941 (emphasis added).

[19]     Here, the parties entered into the Partial Mediated Agreement on March 17, 2022, which settled the issue of child custody between the parties, and the trial court accepted and approved of this agreement. In the Partial Mediated Agreement, the parties agreed to share "joint physical custody." Appellant's App. Vol. II p. 22. As explained above, this term means equal parenting time. Although both parties subsequently moved to modify legal custody, neither party sought to modify physical custody. The only issues regarding Daughter that were left for the trial court to resolve were the specifics of the parenting time schedule and where Daughter would attend school.[5] Yet, both in the

---

[5] We reject Father's argument that the parties intended the Partial Mediated Agreement to be only a provisional agreement subject to the final hearing. Father claims that, by "reserv[ing] numerous child-related issues for the trial court's future determination, each of which substantively impacted custody, support, or parenting time between Mother and Father," a future final hearing was contemplated. Appellee's Br. pp. 14-

Provisional Order and the final hearing, the trial court *sua sponte* modified the parties' Partial Mediated Agreement after the court had already accepted and approved of the agreement. This was improper. *See Bailey v. Bailey*, 7 N.E.3d 340 (Ind. Ct. App. 2014) (holding that the trial court erred by *sua sponte* modifying physical custody of children from mother having primary physical custody to joint physical custody following a hearing on father's petition to hold mother in contempt because neither party filed a petition to change physical custody, neither party argued for a change in custody, and trial court did not find that modification was in the children's best interests).

[20] In the final dissolution decree, the trial court indicated that it was following the Partial Mediated Agreement and ordered that the parties have "joint physical custody" of Daughter. Appellant's App. Vol. II p. 50. The trial court, however, then proceeded to award Mother parenting time that was not equal to that awarded to Father, i.e., parenting time pursuant to the Parenting Time Guidelines with an additional overnight on Sundays when it was Mother's weekend with Daughter and an additional overnight every week during the mid-week parenting time.

[21] The trial court estimated that this arrangement would give Mother parenting time consisting of 176 overnights with Daughter in a given year. This is an

---

15. Although the Partial Mediated Agreement indicated that the parties were not in agreement regarding the primary residence of Daughter or the long-term parenting time schedule, the agreement was clear and unambiguous that the parties agreed to share "joint physical custody," which as explained above, means equal parenting time. Nothing in the Partial Mediated Agreement suggests that it was only a provisional agreement.

approximate 52% – 48% split of parenting time. Mother, however, notes (and Father does not dispute) that the trial court's decree actually gives her only 162.5 overnights with Daughter per year, which constitutes only 44.5% of the parenting time.

[22] The term "joint physical custody" might not require a perfectly equal 50% – 50% split of parenting time, but we are unable to say that granting Father 55.5% of parenting time and Mother 44.5% of parenting time is consistent with the intention of the parties to share "joint physical custody" of Daughter. The trial court's final dissolution decree purported to award the parties joint physical custody but did not award Mother and Father equal parenting time. We, therefore, conclude that the trial court abused its discretion by failing to abide by the terms of the Partial Mediated Agreement it had already accepted.

## Conclusion

[23] The parties entered into a Partial Mediated Agreement that settled the issue of child custody by agreeing to "joint physical custody." The trial court accepted the Partial Mediated Agreement. In its final dissolution decree, the trial court stated that it was awarding the parties "joint physical custody" pursuant to the Partial Mediated Agreement. Yet the trial court awarded Mother over ten percent less parenting time than that awarded to Father. We find that this is not "joint physical custody" as agreed to by the parties and as accepted and approved by the trial court. Accordingly, we reverse the trial court's award of non-equal parenting time and remand with instructions that the trial court award equal parenting time pursuant to the Partial Mediated Agreement.

Reversed and remanded with instructions.

Bailey, J., and Kenworthy, J., concur.