## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 27 2017, 11:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Michael W. Shipman
Centerville, Indiana

ATTORNEYS FOR APPELLEE

Jonathan R. Deenik
Deenik Law, LLC
Greenwood, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael W. Shipman, *Appellant-Respondent,* | September 27, 2017 |
| | Court of Appeals Case No. 29A05-1706-DR-1213 |
| v. | Appeal from the Hamilton Superior Court |
| Angela L. (Shipman) Tanksley, *Appellee-Petitioner.* | The Honorable William J. Hughes, Judge |
| | Trial Court Cause No. 29D03-1406-DR-6021 |

**Kirsch, Judge.**

[1]     Michael W. Shipman ("Father") appeals after the trial court granted Angela L. (Shipman) Tanksley's ("Mother") petition to modify custody, raising several issues, which we consolidate and restate as:

I. Whether the trial court erred when it modified parenting time and physical custody; and

II. Whether the trial court erred when it modified legal custody.

We affirm in part and reverse in part.

## Facts and Procedural History

Mother and Father married in June 1995 and have three children ("the Children"), born in 2003, 2006, and 2008. Mother filed a petition for dissolution in June 2014. Following mediation, the parties executed a settlement agreement, resolving all property issues. At some point prior to the January 4, 2016, final hearing, they also agreed to joint legal custody. Issues of physical custody, parenting time, and child support remained for resolution at trial. Father sought shared physical custody and balanced parenting time, but Mother proposed that she would have physical custody and that Father's parenting time would be every other weekend, as well as Monday and Wednesday evenings with the Children. On May 9, 2016, the marriage was dissolved by Decree of Dissolution ("the Decree").[1]

---

[1] We note that Father, now pro se, was represented by counsel at the dissolution hearing and at the post-dissolution hearing giving rise to this appeal.

[4]     In the Decree, the trial court awarded the parties joint legal custody of Children, pursuant to their agreement. *Appellant's App. Vol. 2* at 23. With regard to physical custody, the trial court ordered as follows:

> 21.  The Court finds that it is in the best interest of the minor children that [Mother] exercise primary physical custody of the minor children subject to parenting time in the [Father].  Regular parenting time shall be every other weekend from Friday after school until return to school on Tuesday AM *until the commencement of summer break.*

*Id.* at 26 (emphasis added).  The trial court continued, with regard to physical custody and parenting time:

> Beginning with the first Friday of Summer Break, *the parties shall move to a 2-2-5-5 schedule*.  Under said schedule, the [Father] shall have overnight parenting time on Monday and Tuesday of each week, the [Mother] shall have overnight parenting time on Wednesday and Thursday of each week.  The parties shall then alternate Friday through Sunday night every other week.  The party who would have exercised visitation on the first Friday after the commencement of Summer Break under the regular schedule in place from the Decree until the commencement of Summer Break shall be the party to exercise the first weekend of visitation under the new schedule.  In addition, the parties shall exercise holiday visitation and extended parenting time during school breaks pursuant to the Indiana Parenting Time Guidelines.

*Id*. at 26-27 (emphasis added).  Thus, until summer break, Mother had physical custody of Children, but at the commencement of summer break, the parties moved to a 2-2-5-5 shared physical custody arrangement.  Due to the strained

nature of the parents' relationship, the trial court ordered them to exchange Children "at a neutral location and not at the separate residences of the parties, unless specifically agreed between the parties in writing prior to the exchange." *Id*. at 26. The Decree recognized that Children began counseling shortly after the separation of the parties, and "[t]his counseling was instituted to assist the [C]hildren to adjust to the realities of the part[ies]' dissolution." *Id*. at 24.

[5] Several months after the Decree had been issued, on August 30, 2016, Mother filed a "Verified [] Petition to Modify Custody, Parenting Time and Child Support" ("Petition to Modify").[2] *Id*. at 33. In her Petition to Modify, she acknowledged that, under the Decree, the parties "share[d] joint physical custody following a 2-2-5-5 schedule" and that "[t]here is now a substantial change in circumstances and that it is in the [C]hildren's best interest that the Court's custody order be modified." *Id.* Mother alleged that: (1) Father allowed Children to be left unattended at the local fair; (2) Father was unwilling to modify his work schedule to accommodate Children after school, leaving the children alone; (3) the relationship between Father and Children had declined; (4) Children expressed a strong desire that custody be modified; and (5) Father relocated without giving proper notice. *Id*. at 33-34. Mother requested that "the Court modify its

---

[2] The full title of Mother's pleading was "Verified Consolidated Petition to Modify Custody, Parenting Time & Child Support; Request for Appointment of GAL*;* Motion for Rule to Show Cause, and Request for Proceedings Supplemental." *Appellant's App. Vol. 2* at 33-37. However, in this appeal, we are only concerned with Mother's Petition to Modify Custody, Parenting Time and Child Support.

custody Order and grant her physical custody subject to Father's parenting time." *Id.* at 34.

[6] On September 8, 2016, the court appointed as guardian ad litem ("GAL") Cathy Brownson ("GAL Brownson"), pursuant to Mother's request for the appointment of a GAL. After conducting an investigation, GAL Brownson prepared and issued a report on January 13, 2017.

[7] On January 24, 2017, the trial court conducted a hearing on Mother's Petition to Modify, and heard testimony from, among others, Mother, Father, and GAL Brownson. *Id.* Mother testified that the "current custody order is a 50/50, 2/2/5/5 plan[,]" and that she filed the Petition because she desired to modify "that custody arrangement." *Tr. Vol. 2* at 11. Mother explained her reasons behind her decision to file the Petition to Modify, which included that the relationship between Father and Children "is continuing to become more strained," Children have "great anxiety" when they are preparing to go to his house, and "they seem to be much more sad." *Id*. at 14-15. She stated that the current 50/50 arrangement "puts a lot of strain on [Children]" and having to go "back and forth constantly is a big issue for them." *Id*. at 22-23. In her view, the oldest Child was exhibiting signs of anxiety and depression, the middle Child was showing "more anger than what she had before," and the youngest "seems very sad." *Id*. at 16. Mother testified that Children's conduct was different when they were with Father than when they were with her; for instance, Children appeared "fearful of being able to" come up to greet or hug her at sporting events if they came and were seated with Father. *Id*. at 52. She

also acknowledged that she did not greet or speak to Father if and when she saw him at Children's events.

[8] Mother testified that there was no disagreement with Father concerning healthcare, religion, or education. *Id.* at 44. Counsel for Father asked Mother whether she was asking for a change from the then-existing joint legal custody arrangement, and after she indicated she did not understand the question, her counsel stated, "We've not pled a request for modification of legal custody[.]" *Id.* at 45. The cross examination of Mother continued, and counsel for Father asked:

> Q: So you heard your counsel's comments?
>
> A: Yes.
>
> Q: And do you agree that you are not pursuing a modification of legal custody, of the joint legal custody provision?
>
> A: I'm asking for a modification in the custody arrangements for when –
>
> Q: Are you talking about parenting time?
>
> A: Parenting time, yes.

*Id.* Near the conclusion of Mother's testimony, a summary of her requests to the trial court was admitted as an exhibit, and it stated that Mother was asking the trial court to "[m]odify the physical custody order" and to "award Mother

sole physical custody of the [C]hildren"; it did not make any reference to legal custody. *Pet'r's Ex.* 3.

[9] During the hearing, GAL Brownson's fifty-plus page report ("GAL Report") was admitted into evidence. *Pet'r's Ex.* 1. GAL Brownson met with the parties, Children, and other individuals as follows: Mother individually; Father individually; Children in the presence of Mother at her residence; Children in the presence of Father at his residence; Children outside of their parents' presence; a school counselor; therapists; paternal grandmother; Father's girlfriend; a teacher; a work associate of Father's; and family friends. She also reviewed various pleadings, personal documents, reports, text messages, and emails. The GAL Report indicated, among other things, that Children "do not feel physically or emotionally comfortable in Father's home" and are "very unhappy there," that their relationship with him is "strained," and recommended that Father and Children participate in family therapy "to repair the damage to their relationship and reunify to a healthier and positive dynamic." *Pet'r's Ex.* 1 (GAL Report at 46, 48). It also stated that Mother "has contributed to the negativity the children feel for Father and likely continues to do so even if she may not be doing so intentionally." *Id.* at 50. The GAL Report indicated that the parents' communication post-dissolution "is still fairly poor by all reports." *Id.* at 52. In response to the trial court's inquiry at the hearing, GAL Brownson testified that the parties cannot and do not communicate, stating, "I think it's fair to say that it's nearly zero, Judge[.]" *Tr. Vol. 2* at 66.

[10] The GAL Report did not make any modification recommendations, but, rather, provided information to the trial court to enable it to decide the pending issues. GAL Brownson explained in her testimony, "I don't give an opinion as to what the parenting time schedule itself should be or . . . whether it should change. To me[,] that's up to the Judge." *Id*. at 60. However, when asked if she thought Father continuing to have parenting time as ordered previously in the Decree "will be detrimental to his relationship with the children," GAL Brownson replied, "I do if it were to continue to occur with all the other issues that are going on with [Children] and Father." *Id*. at 63.

[11] Father's testimony was that he had made changes to his residence, in response to the GAL Report, to make it feel more "homey" and to have more kid-friendly foods available for Children. *Id.* at 90. He acknowledged that there had been what might be considered a strained relationship with Children, but urged that it was improving and that Children were becoming more comfortable with him and at his home. He stated that he had attempted on occasions to greet Mother at Children's activities or events, but she generally did not reply. He disagreed with Mother's suggestion that he was unwilling to give one of the Children her ADHD medicine and said he supported her taking the medication. He disagreed with GAL Brownson's opinion that his relationship with Children was declining. He agreed to and was supportive of participating in any counseling that might be ordered by the trial court, in order to facilitate and improve his relationship with Children. When asked by the trial court whether his communications with Mother were "terse and

unpleasant," he replied that "generally our communications via e-mail are just, yes, they are terse and – yes, it's challenging, yes." *Id.* at 98-99. Father's request to the trial court regarding Mother's Petition to Modify was that the trial court leave the custody and parenting time arrangement as previously ordered in the Decree.

[12] On May 31, 2017, the trial court issued an Order ("Order") that modified legal custody, changing it from joint legal custody to Mother having sole legal custody. The trial court explained that at the time of the Decree, it had been "persuaded . . . that upon dissolution of the marriage and entry of Decree" the parties' "inability . . . to communicate in a meaningful way for the benefit of the [C]hildren would dissipate," and therefore, it approved their agreement for joint legal custody. *Appellant's App. Vol. 2* at 16. However, it found, "now a year later these parties still do not communicate." *Id*. The trial court determined, "[T]his unwillingness to communicate . . . is having detrimental effects upon these [C]hildren and it must be addressed" because joint legal custody "is the worst possible solution where the parties cannot communicate because i[t] places the children at risk." *Id*. It continued,

> The counseling ordered in the [D]ecree was to ensure that [Father] and [Children] would properly transition to a shared physical custody situation and [Father] did not insist upon that counseling. This Court will no longer allow these [C]hildren to be in legal limbo created by their parents' inability to co-parent.
>
> From this date forward Mother shall have sole legal custody of these minor [C]hildren.

*Id.* at 17.

[13]     The trial court also changed the parenting time schedule by eliminating Father's Monday and Tuesday overnights with Children, instead ordering that he exercise parenting time on evenings during the week and every other weekend from Friday evening to Monday morning. Due to the loss of overnight parenting credits, Father's weekly child support was increased.[3] The Order directed Father to participate in counseling "to the extent recommended by the counselor," with the primary purpose being "to restore the relationship between [F]ather and [Children.]" *Id*. at 18. Father now appeals.

## Discussion and Decision

[14]     Indiana appellate courts grant latitude and deference to our trial courts in family law matters. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). Modifications of child custody, parenting time, and child support are all reviewed for abuse of discretion. *Id*. We do not reweigh the evidence or judge the credibility of the witnesses. *Id*. Instead, we view only the evidence favorable to the trial court's judgment and the reasonable inference that may be drawn from this evidence. *Id.*

---

[3] Father does not directly challenge the child support aspect of the trial court decision, but does ask that, if this court finds that modification of physical custody and parenting time was erroneous, the child support amount be returned to that which was ordered at the time of the Decree. *Appellant's Reply Br.* at 12.

[15]     In this case, neither party requested findings of fact and conclusions thereon, and the trial court titled its decision as an "Order." *Appellant's App. Vol. 2* at 14. Father suggests on appeal that the trial court sua sponte entered special findings, and he asks us to apply the appropriate standard of review in that situation. While we acknowledge that the Order is more detailed than a cursory grant of Mother's Petition to Modify, we are not persuaded that the trial court entered special findings and conclusions thereon. It did not walk through evidence presented at trial, identify the statutes at issue, or enter detailed factual findings and separate conclusions thereon. Rather, it outlined in more general terms what it had ordered in the Decree, what it was ordering on Mother's Petition, and stated, in broad terms, why it was doing so. *Id.* at 14-21. Accordingly, we find it appropriate to review the trial court's decision under the general judgment standard. *See Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008) (in the absence of special findings, we review trial court decision as general judgment); *Wolljung v. Sidell,* 891 N.E.2d 1109, 1111 (Ind. Ct. App. 2008) (where trial court did not make special findings, we review trial court's decision as general judgment). Under this standard, the judgment will be affirmed if it can be sustained on any legal theory consistent with the evidence. *Baxendale*, 878 N.E.2d at 1257. "Judgments in custody matters generally turn on essential factual determinations and will be set aside only when they are clearly erroneous." *Id.* We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment. *Id.* at 1257-58.

# I. Parenting Time and Physical Custody

[16] Parenting time may be modified whenever modification would serve the best interests of the child.[4] Ind. Code § 31-17-4-2. Here, the trial court reduced Father's parenting time, from two nights during the week to one evening per week, reducing it "from seven overnights to three overnights every fourteen days." *Appellant's Br.* at 27. He argues that the primary reason given by the trial court in reducing Father's parenting time was failure of both Mother and Father to communicate, which he maintains was not proper justification to modify parenting time. Although the parties' lack of communication may have been *a* reason for reducing parenting time, we disagree that it was the only, or even the "primary," reason for reducing parenting time.

[17] The record before us reflects that, while Mother and Father do exchange some emails and texts, they do not communicate well with each other. However, this lack of open and frequent communication is not the only reason appearing in the record that supported modification of parenting time. The GAL Report reflected that Children's relationship with Father was "strained" and seemed to GAL Brownson to be worsening rather than improving with time. *Exhibits Vol. Pet'r's Ex.* 1 (GAL Report at 46). Children told the GAL that they were not comfortable at his home, which GAL Brownson described as not feeling comfortable or lived-in and lacked kid-friendly food choices, and they preferred

---

[4] We note that, unlike a modification of physical custody, a modification of parenting time does not require a showing of a substantial change. *Miller v. Carpenter*, 965 N.E.2d 104, 110 (Ind. Ct. App. 2012).

to go less frequently or, in one child's opinion, not at all. According to Mother, Children expressed anxiety prior to going to Father's home and that going "back and forth constantly" was hard on them. *Tr. Vol. 2* at 23. GAL Brownson observed little to no interaction between Father and Children; there was no affection shown by Father or by Children. When she later asked Father whether what she had observed at his home between him and Children was typical of their relationship, he said that it was, which indicated to her that he "did not appear to pick up on the tension." *Pet'r's Ex.* 1 (GAL Report at 49). GAL Brownson testified that in her opinion it would be detrimental to Children if the 50/50 arrangement continued. *Tr. Vol. 2* at 63. The record in this case sufficiently demonstrates that a reduction from 50/50 shared parenting time to a schedule where Father will exercise parenting time on alternating weekends and one evening per week is in the best interest of Children.

[18] Although the trial court's Order made no express statement that it was modifying physical custody, Father contends that the "trial court effectively modified physical custody" when it reduced his parenting time. *Appellant's Br.* at 22. To the extent that the Order could be viewed as modifying the physical custody from a shared arrangement to granting sole physical custody to Mother,[5] we find the record supports the modification.

---

[5] As Father observes, our courts have recognized that an equal division of parenting time may constitute de facto joint physical custody. *Appellant's Br.* at 11 (citing to *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010), where court held that increase in parenting time to seven overnights during any two-week period was a "de facto modification" to joint physical custody).

The general provision governing custody modification is found in Indiana Code section 31-17-2-21. Modifications are permitted only if the modification is in the best interests of the child and there has been a substantial change in one or more of the factors identified in Indiana Code section 31-17-2-8 ("Section 8"). Ind. Code § 31-17-2-21(a). The relevant factors listed under Section 8 are:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian.

Ind. Code § 31-17-2-8. A parent seeking modification of custody bears the burden of proving that the existing custody order should be altered. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010) (citing *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002)). When evaluating whether a change of circumstances has occurred that is substantial enough to warrant a modification of custody, the context of the whole environment must be judged, "'and the effect on the child is what renders a change substantial or inconsequential.'" *In re Marriage of Sutton,* 16 N.E.3d 481, 485 (Ind. Ct. App. 2014) (quoting *Jarrell v. Jarrell,* 5 N.E.3d 1186, 1193 (Ind. Ct. App. 2014), *trans. denied*).

[20] Father urges that the trial court's Order failed to identify in which factors, if any, there had been a change in circumstances, and, rather, the Order focused on the lack of communication between the parties, which, Father argues, had not changed; that is, the parties did not communicate well when their marriage was dissolved and still do not. Thus, he argues, there has not been a continuing and substantial change in circumstances, and the trial court's modification must be reversed.

[21] As to Father's argument that the trial court failed to identify which circumstances had changed and relied on only the poor communication – which had not changed – we observe that the parties did not request, and the trial court did not enter, specific factual findings. In that situation the trial court was not required to specifically identify which of the enumerated factors had changed. *See In re Paternity of J.T.*, 988 N.E.2d 398, 400 (Ind. Ct. App. 2013) ("[I]in ordering a modification of child custody a trial court is not, absent a request by a party, required to make special findings regarding the continuing and substantial changes in the parties' circumstances."). As stated, we will affirm the judgment if it can be sustained on any legal theory consistent with the evidence. *Baxendale*, 878 N.E.2d at 1257.

[22] Here, evidence was presented concerning a number of the factors of Section 8, including the wishes of Children, the interrelationship of Children with parents, and the mental and physical health of all individuals involved. Ind. Code § 31-17-2-8(3), (4), (6). In particular, Mother testified to her concerns about Children's relationship with Father and their demonstrated anxiety about going to his home for parenting time. She also described that their demeanor was different when they were with him at events and that they treated her differently if he was present. She testified to her belief that the relationship between Children and Father was worsening rather than improving. GAL Brownson's Report outlined her observations of Children's interactions with Father and those with Mother, and it included Children's wishes to go to Father's home

less frequently, and in the case of one Child, never.[6] She described that the relationship with Father was strained, that counseling was warranted to rebuild the relationship, and that continuing with the 50/50 parenting time would, in her opinion, be detrimental to Children.

[23] "As our Supreme Court has explained regarding our review of custody modifications, 'we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence[.]'" *Sutton*, 16 N.E.3d at 487 (quoting *Kirk,* 770 N.E.2d at 307). We find that the evidence demonstrated a change in circumstances of one or more of Section 8 factors and that the modification was in Children's best interests. Concluding that the trial court's judgment was consistent with the evidence, we affirm it.

## II. Legal Custody

[24] Indiana Code section 31-17-2-15 ("Section 15") provides that, in determining whether an award of joint legal custody would be in the best interest of the child, "the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of

---

[6] With regard to a child's wishes, "[T]he statute does not direct courts to discount entirely the wishes of children under the age of fourteen. It merely provides that a child's wishes are to be given *more* weight in the balancing of facts if the child is at least fourteen years." *Sabo v. Sabo*, 858 N.E.2d 1064, 1070 (Ind. Ct. App. 2006) (emphasis in original). Thus, "the wishes of children under fourteen years of age are entitled to some consideration*." Julie C.*, 924 N.E.2d at 1257 n.2.

joint legal custody."[7]  Here, the parties agreed to it, and the trial court approved it.  *Appellant's App. Vol. 2* at 22.

[25] As with modifications of physical custody, a trial court may not modify legal custody unless (1) the modification is in the best interests of the child, and (2) there is a substantial change in one or more of the factors that the court may consider under Section 8.  *Julie C.*, 924 N.E.2d at 1259.  In determining whether a joint legal custody arrangement should be modified, a court may also consider the factors listed in Section 15.  *Id*. at 1260.  "Particularly germane to whether joint legal custody should be modified is 'whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare.'"  *Id*. (citing Ind. Code § 31-17-2-15(2)).

[26] On appeal, Father contends that the trial court erred when it modified legal custody because neither party requested modification of legal custody.  In

---

[7] Under Section 15, the trial court also is to consider:

> (1) the fitness and suitability of each of the persons awarded joint custody;
>
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
>
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
>
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
>
> (5) whether the persons awarded joint custody:
>
>> (A) live in close proximity to each other; and
>>
>> (B) plan to continue to do so; and
>
> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

support, he refers us to *Bailey v. Bailey*, 7 N.E.3d 340 (Ind. Ct. App. 2014), for the proposition that trial courts may not modify custody sua sponte. In *Bailey*, the mother had been awarded primary physical custody in the dissolution, and she filed, as is relevant here, a petition to restrict the father's visitation. Following a hearing, the trial court entered a "parallel parenting time order,"[8] which ordered that the mother and father would have joint physical and joint legal custody of the children. *Id*. at 343. On appeal, the mother claimed that the trial court should not have modified physical custody in the absence of any request by either party to do so. *Id*.

[27] The *Bailey* court agreed, explaining that the trial court's custody modification order suffered from a "fundamental defect," namely:

> [N]either Father nor Mother ever requested a change of custody. Longstanding Indiana law has prohibited trial courts from sua sponte ordering a change of custody. Rather, when such an important issue as the custody of children is involved, a modification generally can be ordered only after a party has filed a petition requesting such a modification, the other party has notice of the filing, and a proper evidentiary hearing is held at which both parties may be heard and the trial court fully apprised of all necessary information regarding change of circumstances

---

[8] "Effective March 2013, a provision allowing for the creation of Parallel Parenting Orders was added to the Parenting Time Guidelines. Such orders are intended to minimize the contact between 'high conflict parents . . . at least until the parent conflict is under control.'" *Bailey v. Bailey*, 7 N.E.3d 340, 344 (Ind. Ct. App. 2014) (quoting Ind. Parenting Time Guidelines, § IV, Scope).

and a child's best interests before deciding whether a modification should be ordered[.]

*Id.* at 344 (internal citations omitted). The *Bailey* court recognized that, there, neither party had filed a petition requesting a change in custody, and "neither parent gave any hint during the evidentiary hearing that he or she desired a change in custody." *Id.* at 345. The *Bailey* court determined that the mother had "no warning" that she had to present evidence on a modification of custody. *Id.* at 345. Therefore, it reversed the trial court's sua sponte modification of physical custody. *Id.*[9] at 345-46.

[28] Here, Father argues that the trial court likewise erred when it modified the joint legal custody order and awarded sole legal custody to Mother because no party had requested the modification. Given the record before us, we agree. First, the language of Mother's Petition to Modify requested only a modification of parenting time and the shared physical custody arrangement, did not request modification of legal custody, and, indeed, made no mention of legal custody at all.[10] Second, at the hearing on her Petition to Modify, Mother was directly

_____

[9] The court in *Bailey v. Bailey* acknowledge that "[t]here may instances where a trial court could order modification of custody in favor of one parent in the absence of a petition requesting modification. For example, if one parent files a custody modification request, a trial court may instead modify custody in favor of the other parent, even if he or she did not file a cross-petition to modify custody, where it is clear during the modification hearing that the other parent desired custody." 7 N.E.2d 340, 344 (Ind. Ct. App. 2014).

[10] This situation is distinguishable from *Julie C v. Andrew C*, where although the title of the mother's petition indicated a request for modification of physical custody, "the pleading [was] clear that Mother [was] asking for a modification of legal custody." 924 N.E.2d 1249, 1252 n.1 (Ind. Ct. App. 2010). It is also distinguishable from *Higginbotham v. Higginbotham*, 822 N.E.2d 609, 612 (Ind. Ct. App. 2004), where, in rejecting the father's claim that the issue of legal custody was not before the trial court, this court determined

asked whether she was seeking modification of legal custody and her responses indicated that she was seeking a reduction in Father's parenting time and a modification from the then-existing 2/2/5/5 shared physical custody arrangement. Third, when she was further asked to confirm that she was not seeking a modification of the existing joint legal custody arrangement, she replied that she did not understand, and at that point her counsel, in an attempt to clarify any confusion, stated that Mother was not seeking a modification of legal custody. Fourth, during her testimony, Mother acknowledged that she and Father have no disagreement regarding Children's education, religious upbringing, or medical care. Fifth, Mother's Summary of Request[s] exhibit (Pet'r's Ex. 3), admitted into evidence near the conclusion of her testimony, stated that she was seeking a modification of physical custody.

[29] Mother nevertheless urges that modification of legal custody was tried by consent. In support, she cites to the following exchange at the hearing, during which Father's counsel questioned Mother about legal custody:

> Q: As you sit here today you're not asking the Court to modify the shared joint custody, legal custody arrangement; are you?
>
> A: I'm asking for a modification of the custody arrangements.

---

that the father's petition to modify requested a modification of custody after a custody evaluation, and that evaluation recommended (1) that joint legal custody continue, and (2) that if joint legal custody was not continued, that the mother be given sole legal custody of the child. *Id*. Thus, the *Higginbotham* court determined, "[T]he issue of joint legal custody was squarely before the trial court." *Id*.

Q: Are you talking about legal custody?

A: I don't understand your question.

Q: Are you no longer willing to allow [Father] to have input into the decisions regarding the children's healthcare, education, religion?

*Tr. Vol. 2* at 44-45. At that point, Mother's counsel interjected:

And, Your Honor, I might be able to help. We've not pled a request for modification of legal custody, nor is [Mother] pursuing a request to modify --

*Id.* at 45. The trial court then made the following statement:

I wouldn't be surprised, but I have a petition to modify custody before the Court and I haven't heard a stipulation otherwise.

*Id.* Thereafter, counsel for Father continued with questioning Mother:

Q: So you heard your counsel's comments?

A: Yes.

Q: And do you agree that you are not pursuing a modification of legal custody, of the joint legal custody provision?

A: I'm asking for a modification in the custody arrangements for when --

Q: Are you talking about parenting time?

A: Parenting time, yes.

*Id*.

[30] Based on that exchange, and the trial court's remark, Mother contends, "Father was put on fair notice from the trial court it would determine issues of legal custody." *Appellee's Br*. at 11. We disagree and we find that the converse interpretation is equally feasible, if not more likely, *i.e.*, the issue of modification of legal custody was *not* at issue. Indeed, the record suggests this was Father's counsel's understanding, because after this series of questions and answers, Father's counsel dropped any further questioning about legal custody, thus evincing satisfaction that modification of legal custody was not at issue. As the *Bailey* court observed, although "issues raised by the pleadings can be altered by the evidence adduced at trial," notice is still required. *Bailey*, 7 N.E.3d at 344. Specifically, the court stated:

> [A] party is entitled to some notice that an issue is before the court before it will be determined to have been tried by consent. Both parties must actually litigate the new issue, and a new issue may not be interjected under the pretense that the evidence was relevant to some properly pleaded matter.

*Id*. Here, based on the record before us, we cannot say that Father had notice that modification of legal custody was being litigated either expressly or by consent. We therefore find it was error to modify legal custody.

[31] We appreciate the trial court's concern that Children's welfare may be impacted by the parties' lack of civil and open communication, and in our decision today,

we express no opinion as to whether the evidence presented would or would not support modification of joint legal custody. Rather, we hold that because the record does not reflect that modification of joint legal custody was sought in Mother's Petition to Modify or was otherwise litigated at the hearing, the parties did not expressly or impliedly consent to the issue of custody modification being litigated. *See Bailey*, 7 N.E.3d at 344 n.2 (noting that parents were "high conflict" and unable to communicate regarding their children, but "as with physical custody, neither party sought a change in their existing joint legal custody arrangement"). Accordingly, we reverse that portion of the trial court's Order that modified joint legal custody and awarded sole legal custody to Mother and affirm it in all other respects.

[32] Affirmed in part and reversed in part.

[33] Najam, J., and Brown, J., concur.