## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 17 2020, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

April L. Edwards
Boonville, Indiana

ATTORNEY FOR APPELLEE

Conor O'Daniel
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dusty Witter,<br>*Appellant-Petitioner,*<br><br>v.<br><br>David Witter,<br>*Appellee-Respondent.* | December 17, 2020<br><br>Court of Appeals Case No.<br>20A-DR-850<br><br>Appeal from the Warrick Superior Court<br><br>The Honorable J. Zach Winsett, Judge<br><br>Trial Court Cause No.<br>87D01-1606-DR-782 |

**Tavitas, Judge.**

# Case Summary

Dusty Witter ("Mother") appeals the trial court's denial of Mother's motion for sole legal custody, the modification of decision-making authority, the modification of parenting time, and denial of Mother's motions for contempt and sanctions regarding David Witter ("Father"). We affirm.

# Issues

Mother raises five issues, which we consolidate and restate as:

> I.   Whether the trial court erred by relying on the guardian ad litem's recommendations.
>
> II.  Whether the trial court erred by denying Mother's request for sole legal custody and modifying the parties' decision-making authority regarding the children.
>
> III. Whether the trial court erred by modifying Father's parenting time.
>
> IV.  Whether the trial court erred by denying Mother's August 2018 and June 2019 petitions for contempt.

# Facts

Father and Mother were married in 2006 and had two children: Da.W., who was born in 2009, and De.W., who was born in 2013. In 2016, Mother filed a petition for dissolution of marriage, and the trial court granted the petition in March 2017. Mother and Father agreed to joint legal custody of the children with Mother having primary physical custody. The parties also agreed that: (1) Father would have parenting time every Tuesday evening and every other weekend; (2) the parties would follow the Indiana Parenting Time Guidelines

and Commentary regarding the opportunity for additional parenting time;[1] and (3) Father would pay $137.00 in weekly child support. Father subsequently married Stacey Witter ("Stepmother").

[4] Almost immediately, disputes between the parties arose. Mother filed a petition for contempt in April 2017 and alleged that Father had repeatedly violated the agreement regarding the opportunity for additional parenting time. The parties were unable to agree on a summer parenting time schedule, and Mother filed a petition regarding the same in May 2017. In June 2017, Mother filed another petition for contempt regarding additional allegations of: (1) violations of the opportunity for additional parenting time agreement; (2) Father's failure to communicate that the children were out of state; (3) Father's failure to advise Mother of De.W.'s visit to the emergency room; and (4) Father's child support arrearage.

[5] In June 2017, Father also filed a petition for contempt due to Mother's alleged lack of cooperation and failure to provide him with the opportunity for additional parenting time. In July 2017, Mother filed a third petition for contempt regarding Father's alleged failure to advise her of the children's health

---

[1] Indiana Parenting Time Guidelines Section I(C)(3) provides:

When it becomes necessary that a child be cared for by a person other than a parent or a responsible household family member, the parent needing the child care shall first offer the other parent the opportunity for additional parenting time, if providing the child care by the other parent is practical considering the time available and the distance between residences. The other parent is under no obligation to provide the child care. If the other parent elects to provide this care, it shall be done at no cost and without affecting child support. The parent exercising additional parenting time shall provide the necessary transportation unless the parties otherwise agree.

concerns. Additionally, in July 2017, Mother filed a motion objecting to an invasive healthcare procedure that Father wanted De.W. to undergo. Father then filed another petition for contempt and alleged that Mother refused his parenting time with De.W. while De.W. was sick.

[6] After a hearing on the pending motions, the trial court entered an order on September 21, 2017: (1) requiring Mother and Father to promptly notify the other parent of the children's healthcare appointments/concerns; (2) addressing summer parenting time and extra-curricular activities; (3) ordering the recommendations of De.W.'s pediatrician to be followed; and (4) clarifying the opportunity for additional parenting time.

[7] Subsequent to the trial court's September 2017 order, Mother filed a fourth petition for contempt alleging Father failed to carry health insurance on the children per the dissolution agreement. In August 2018, Mother filed another petition for contempt and alleged that Father failed to communicate with Mother regarding the children's healthcare; Father and Stepmother posted disparaging social media posts regarding Mother; and Father reported to the Department of Child Services ("DCS") that Mother physically abused the children, a report which "was completely unfounded and unsubstantiated." Appellant's App. Vol. II p. 78.

[8] In September 2018, Father filed a petition to modify custody claiming Mother had thwarted Father's involvement with the children and Mother physically abused both children. Father did not detail the modifications in custody that he

wanted. Father filed a petition for the appointment of a guardian ad litem ("GAL"). Father also filed another petition for contempt and argued that Mother failed to consult with him regarding medical concerns, educational functions, and the opportunity for additional parenting time.

[9] In November 2018, the trial court appointed Kelly Ferguson as GAL for the children. The GAL filed her first report in January 2019 ("first report"). The GAL noted that the parents had started using Our Family Wizard for communications; that the children did not "want more time with their father"; and that "negative discussions about the other parent were occurring in both homes." *Id.* at 96. The GAL recommended, in part, joint legal custody with Mother having primary physical custody and that both Mother and Father refrain from speaking disparagingly about the other in the presence of the children or through social media posts or memes.

[10] In June 2019, Mother filed another petition for contempt and alleged that Father refused to allow Mother's mid-week parenting time on June 5, 2019. Mother also filed a motion for modification of custody requesting sole legal custody of the children. Mother alleged that Father and Stepmother took five-year-old De.W. to the emergency room for a possible urinary tract infection and told healthcare providers that Mother's boyfriend might be sexually abusing De.W. DCS was contacted, and De.W. underwent a pelvic exam and rape kit as a result of the allegations. Mother also noted that a prior DCS report against Mother was "baseless and unsubstantiated." Appellant's App. Vol. III p. 5. Mother also filed a petition for modification of child support.

[11]     In July 2019, Father filed another petition for contempt. Father alleged that Mother failed to give him the opportunity for additional parenting time and failed to give Father a permission form for an evaluation of Da.W. In July 2019, Father also filed a petition to modify custody and alleged that De.W. was sleeping in the same bed as Mother and her new boyfriend. Father did not detail the modifications in custody that he wanted.

[12]     In August 2019, the GAL submitted her second report to the trial court ("second report"). The GAL noted that "things have deteriorated since this GAL initially was in the case" and that Da.W. wanted to spend more time with Father. *Id.* at 20. The GAL noted that Father and Stepmother had "inappropriate[ly]" recorded interactions with the children and given the recordings to the GAL. *Id.* The GAL changed her recommendation regarding custody of the children. She recommended: (1) a "50/50 parenting time split"; (2) joint custody with a "decision maker"; (3) counseling for the children; (4) that Mother should not introduce the children to a partner until Mother has been dating the person for six months; (5) no interaction between Mother and Father other than through Our Family Wizard; (6) that neither party should encourage the children to lie; and (7) that neither party should discuss the case or the other party with the children. *Id.* at 21.

[13]     In October 2019, the GAL filed a third report with the trial court ("third report"). The GAL repeated that Da.W. wanted to spend more time with Father and noted that, on September 12, 2019, DCS was contacted regarding

allegations of physical abuse by Mother toward Da.W. The GAL affirmed her previous recommendations.

[14] In November 2019, Mother filed an emergency motion for sanctions. Mother alleged that Da.W. had recently been diagnosed with autism and, during a meeting with school officials, Father distributed copies of the GAL reports and DCS reports to Da.W.'s teacher and the principal. The reports contained unsubstantiated allegations of sexual abuse regarding De.W. and De.W.'s healthcare information.

[15] In February 2020, the GAL submitted her fourth report to the trial court ("fourth report"). The GAL noted that both children wanted to spend more time at Father's house. The GAL also reported that DCS was contacted regarding an incident at Father's house involving Da.W., Father's stepson, and a gun; the allegation, however, was found to be "unsubstantiated." *Id.* at 72. The GAL again recommended, in part, joint legal custody with a "decision maker" and a "50/50 parenting time split." *Id.* at 75.

[16] The trial court held hearings on all the contempt motions and modification petitions on multiple dates in September 2018, January 2019, August 2019, October 2019, November 2019, and February 2020.[2] On April 7, 2020, the trial court entered findings of fact and conclusions thereon regarding the pending

---

[2] We note the delay between the numerous contempt petitions and the resolution of this matter. We encourage trial courts to provide expedited consideration to matters concerning child custody, support, and parenting time, especially where, as here, high conflict parents are involved.

motions.  The trial court found: (1) "a modification of parenting time is in the best interests of the children"; (2) the parties "shall have shared (50/50) parenting time with the minor children"; and (3) joint legal custody would remain, with Father having "final decision[-]making regarding medical decisions," Mother having "final decision[-]making regarding educational decisions," Father having final decision-making regarding Da.W.'s extracurricular activities, and Mother having final decision-making regarding De.W.'s extracurricular activities.  Appellant's App. Vol. III pp. 111-12.  The trial court also ordered that the parties communicate through Our Family Wizard and denied the parties the "Opportunity for Additional Parenting Time" pursuant to Section C(3) of the Indiana Parenting Time Guidelines and "Extended Parenting Time" with the children.  *Id.* at 112.  The trial court also modified the child support obligation.  Finally, the trial court denied the parties' multiple contempt petitions and Mother's emergency motion for sanctions.

[17]  The trial court noted that it "took great pains to fashion an order that would eliminate as much contact between the parties as possible" because the "parties cannot put their animosity towards each other aside." *Id.* at 114.  The trial court stated that granting sole custody was "an extreme measure," which could be ordered "in the future if the parties continue their conflict towards each other." *Id.*  The conflict between Mother and Father "has created a danger to the overall health and well-being of the children," but the trial court hoped that the order would stop the "constant arguing, mistrust, litigation, inability to

communicate, and other disdainful behaviors between the parties . . . ."[3] *Id.*

Mother now appeals.

# Analysis

[18] The trial court here entered sua sponte findings of fact and conclusions thereon in its order regarding legal custody, decision-making authority, parenting time, and contempt issues.[4] "Where a trial court enters findings sua sponte, the appellate court reviews issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings, and whether the findings support the judgment." *Steele-Giri v. Steele*, 51 N.E.3d 119, 123 (Ind. 2016). "A finding is clearly erroneous when there are no facts or inferences drawn therefrom which support it." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence and reasonable inferences drawn therefrom that support the findings. *Id.* We review the trial court's legal conclusions de novo. *Id.*

---

[3] We note that the GAL recommended counseling for the children. This type of litigation might also warrant parental counseling.

[4] Detailed, specific findings on the custody factors were not required unless a party filed a request for findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52. *See Hecht v. Hecht*, 142 N.E.3d 1022, 1031 (Ind. Ct. App. 2020) ("Although it did not make specific findings regarding each factor, we note that the trial court was not required to enter a finding as to each factor it considered."); *see also Russell v. Russell*, 682 N.E.2d 513, 515 (Ind. 1997) ("Although a court is required to consider all relevant factors in making its determination, it is not required to make specific findings [when ruling on a motion to modify custody]."

Our Supreme Court has held that "[a]ppellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*

Judgments in custody matters typically turn on the facts and will be set aside only when they are clearly erroneous. *Perkinson*, 989 N.E.2d at 761. "We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). "It is not impossible to reverse a trial court's decision regarding child custody on appeal, but given our deferential standard of review, it is relatively rare." *Hecht v. Hecht*, 142 N.E.3d 1022, 1029 (Ind. Ct. App. 2020). "The party seeking to modify custody bears the burden of demonstrating the existing custody should be altered." *Steele-Giri*, 51 N.E.3d at 124.

## I. *Guardian Ad Litem*

Mother first argues that the trial court erred by relying upon the GAL's recommendations. Mother contends that the GAL's recommendations

significantly changed between the first report and the second report. According to Mother, the GAL "did not faithfully discharge her duties to the children in this case and make recommendations based upon objective facts and first hand knowledge." Appellant's Br. p. 45.

[22] Mother, however, cites no authority for the proposition that the trial court was required to disregard the GAL's recommendations. Accordingly, Mother has failed to make a cogent argument, and thus, this issue is waived. *See Zavodnik v. Harper*, 17 N.E.3d 259, 264 (Ind. 2014) (holding that a claim was waived because the appellant failed to support the claim with cogent argument or citation to relevant authority).

[23] Waiver notwithstanding, Mother makes no argument that the GAL's reports and testimony were inadmissible. Rather, Mother's argument merely amounts to a request that we reweigh the evidence and completely disregard the GAL's recommendations, which we cannot do. The trial court was presented with the GAL's multiple reports and the GAL's testimony including cross-examination, and the trial court was entitled to weigh those reports and testimony. *See, e.g., D.C. v. J.A.C.*, 977 N.E.2d 951, 957 (Ind. 2012) ("Ultimately, although an appellate court in this case may be able to reach a different conclusion from that of the trial court, doing so would involve reweighing the evidence, which is not permitted."); *see also In re C.K.*, 70 N.E.3d 359, 375 (Ind. Ct. App. 2016) ("We cannot say that the juvenile court abused its discretion in failing to afford the same weight to the testimony of the GAL and to the testimony and report of

Dr. Kohli as Parents urge this Court to do."), *trans. denied*. The trial court did not abuse its discretion by relying on the GAL's recommendations.

## II. Legal Custody

[24] Next, Mother argues that the trial court abused its discretion by failing to give Mother sole legal custody of the children and by granting Father decision-making authority over the children's healthcare decisions and Da.W.'s extracurricular activities. Despite Mother's request for sole legal custody, the trial court ordered that joint legal custody of the children would remain in place. The trial court did, however, limit the decision-making of both parents—Father would have "final decision[-]making regarding medical decisions"; Mother would have "final decision[-]making regarding educational decisions"; Father would have final decision-making regarding Da.W.'s extracurricular activities; and Mother would have final decision-making regarding De.W.'s extracurricular activities. Appellant's App. Vol. III p. 112.

[25] "Joint legal custody" is defined in Indiana Code Section 31-9-2-67 as: "shar[ing] authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." The trial court is required to consider three statutes when modifying legal custody: Indiana Code Sections 31-17-2-8, -15, and -21. *Miller v. Carpenter*, 965 N.E.2d 104, 109 (Ind. Ct. App. 2012). Indiana Code Section 31-17-2-21 provides in relevant part:

The court may not modify a child custody order unless:

(1) modification is in the best interests of the child; and

(2) there is a substantial change in one (1) or more of the factors that the court may consider under [Indiana Code Section 31-17-2-8] and, if applicable, [Indiana Code Section 31-17-2-8.5].[5]

Indiana Code Section 31-17-2-8 provides that the trial court shall consider all relevant factors, including:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents;

(B) the child's sibling; and

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

---

[5] Indiana Code Section 31-17-2-8.5 is inapplicable here.

(A) home;

(B) school; and

(C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

(9) A designation in a power of attorney of:

(A) the child's parent; or

(B) a person found to be a de facto custodian of the child.

Finally, Indiana Code Section 31-17-2-15 contains factors that are pertinent specifically to joint legal custody:

(1) the fitness and suitability of each of the persons awarded joint custody;

(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

(5) whether the persons awarded joint custody:

(A) live in close proximity to each other; and

(B) plan to continue to do so; and

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

In addition, under Section 15, the trial court is to "consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody[,]" and it is clear these parties no longer agree. Ind. Code § 31-17-2-15.

[27] Mother focuses her argument on the second factor of Section 15—whether "the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare." Ind. Code § 31-17-2-15(2). According to Mother, because Father is not willing to communicate and cooperate in advancing the children's welfare, joint legal custody is inappropriate. Mother cites allegations that Father failed to communicate regarding additional parenting time, healthcare issues, and extracurricular activities; made false DCS reports; and improperly distributed GAL reports and

DCS reports to school officials. Mother makes no argument regarding the other relevant factors or the children's best interests. Regarding the split decision-making authority, Mother argues that Father has been uninvolved in the children's healthcare and extracurricular activities and, thus, should not have been awarded such decision-making authority.

[28] Father, on the other hand, argues that the children wished to spend more time with Father; that Father and Stepmother have a good relationship with the children; and that Mother merely invites this Court to reweigh the evidence. Father contends that Mother and Father are able to communicate better since the implementation of Our Family Wizard for communications. Father argues that the trial court did not abuse its discretion by fashioning the joint legal custody arrangement with decision-making authority split between Mother and Father.

[29] We have often observed that, where "the parties have made child-rearing a battleground, then joint custody is not appropriate." *Hecht*, 142 N.E.3d at 1031. We decline to regurgitate, as the parties did, all of the missteps of each party. Suffice it to say that the record is replete with evidence that Mother's and Father's communication skills leave much to be desired. It is also apparent that both Mother and Father struggle with placing the children's best interests ahead of their own desires and attempts to discredit and harm the other parent. Both Mother and Father have made decisions regarding the children that are inappropriate. Although the trial court's joint legal custody arrangement with split decision-making authority is unusual, the trial court's order makes it clear

that the trial court went to great lengths to fashion an order that would attempt to alleviate some conflict between Mother and Father and give Mother and Father one final chance to make joint legal custody a workable circumstance.

[30] Mother's argument is merely a request that we weigh the parties' communication difficulties and dislike for each other more heavily than other factors, including the children's wishes and the children's relationships. The trial court was in the best position to weigh the evidence and assess witness credibility. Sadly, both parents have demonstrated poor judgment that negatively impacts the best interests of the children. Under these circumstances, we cannot say that the trial court's denial of Mother's request for sole custody was clearly erroneous or that the trial court's order regarding split decision-making authority between Mother and Father was clearly erroneous.

### III. Equal Parenting Time

[31] Next, Mother argues that the trial court erred by modifying the parenting time. The dissolution decree granted primary physical custody to Mother with Father having parenting time every Tuesday evening and every other weekend. In its modification order, the trial court found that a modification of parenting time was in the children's best interests and ordered that the parties "have shared (50/50) parenting time with the minor children." Appellant's App. Vol. III p. 111.

[32] The parties both filed petitions to modify custody, and neither party filed a petition to modify parenting time. Father, however, requested that the trial court adopt the GAL's recommendations, which included equal parenting time. A parenting time order awarding parents equal time with the children and a joint physical custody order have the same legal impact. This distinction is important, however, because, "pursuant to Indiana Code Section 31-17-2-21, a modification of physical custody requires a showing of the child's best interests and a substantial change in one of the factors listed in Indiana Code Section 31-17-2-8." *Miller*, 965 N.E.2d at 110. Parenting time, however, may be modified "whenever modification would serve the best interests of the child." *Id.* (citing Ind. Code § 31-17-4-2). Indiana Code Section 31-17-4-2 provides:

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

"Thus, unlike a modification of physical custody, a modification of parenting time does not require a showing of a substantial change." *Miller*, 965 N.E.2d at 110. Decisions about parenting time require us to "give foremost consideration to the best interests of the child." *Perkinson*, 989 N.E.2d at 761. We review parenting time decisions for an abuse of discretion. *Id.*

[33] The trial court clearly described its order as a modification of parenting time. In *Miller*, the mother argued that the modification of the father's parenting time

was so substantial that it amounted to a de facto modification of physical custody. *Miller*, 965 N.E.2d at 110; *see also Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010) (concluding that, "when the trial court increased Father's parenting time to seven overnight stays during any given two-week period, it ordered a de facto modification of custody to joint physical custody"). Here, however, Mother makes no argument that the trial court's parenting time modification amounted to a de facto modification of physical custody and addresses the issue as a modification of parenting time. Although the trial court split the parenting time equally between Mother and Father, which would amount to a modification to joint physical custody, Mother makes no such argument and has waived any such contention.[6] Accordingly, we will address the issue as a modification of parenting time.

[34]     Mother argues, in part, that the increase in parenting time is inappropriate because Father and Stepmother: (1) have recorded and interrogated the children; (2) accused Mother of physical abuse and Mother's boyfriend of sexual abuse; (3) accused Mother of neglect and erratic behavior; and (4) Father fails to spend time with the children during his parenting time. Mother's arguments, however, are again a request that we reweigh the evidence, which we cannot do. Evidence was presented that the children desired more time at Father's house, and the GAL recommended the additional parenting time. In

---

[6] Even if we addressed the issue as a modification of physical custody, we would affirm the trial court's decision given evidence of the children's best interests and substantial changes in multiple factors.

fact, Mother had already begun voluntarily allowing Father to have additional overnights. The trial court found that additional parenting time with Father was in the children's best interests, and we cannot say this finding is clearly erroneous. Given the circumstances here, Mother has failed to demonstrate that the trial court abused its discretion by granting Father additional parenting time.

## IV. Contempt

[35] Finally, Mother argues that the trial court erred by failing to grant her multiple motions for contempt.[7] Trial courts are given great deference in contempt actions. *Steele-Giri*, 51 N.E.3d at 129. A determination of whether a party is in contempt of court is a matter within the trial court's sound discretion, and we reverse only where there has been an abuse of that discretion. *Julie C.*, 924 N.E.2d at 1260. Our review is limited to considering the evidence and reasonable inferences drawn therefrom that support the trial court's judgment. *Id.* To hold a party in contempt for violation of a court order, the trial court must find that the party acted with willful disobedience. *Id.* Where the trial court has declined to find a party in contempt, we reverse only where there is no rational basis for the trial court's action. *Id.*

---

[7] Mother also argues that the trial court erred by denying her emergency motion for sanctions. This motion related to Father providing school officials with DCS reports and GAL reports that discussed allegations of sexual abuse and De.W.'s healthcare information. Although Father's conduct, if true, is concerning and inappropriate, Mother points to no court order that prevented Father from doing so. The trial court did not abuse its discretion by denying Mother's motion for sanctions.

Indiana Code Section 34-47-3-1 provides:

> A person who is guilty of any willful disobedience of any process, or any order lawfully issued:
>
>> (1) by any court of record, or by the proper officer of the court;
>>
>> (2) under the authority of law, or the direction of the court; and
>>
>> (3) after the process or order has been served upon the person;
>
> is guilty of an indirect contempt of the court that issued the process or order.

Although both parties filed numerous petitions for contempt, the trial court's order only addressed Mother's August 2018 petition, Father's September 2018 petition, Mother's June 2019 petition, and Father's July 2019 petition. In each case, the trial court found that the filing party failed to meet his or her burden of proof. Mother, however, argues that Father "readily admitted to violating the Order requiring him to provide Mother with opportunities for additional parenting time," for failing to notify Mother of healthcare appointments, and by failing to tell Mother that the children were leaving the State. Appellant's Br. p. 46. Father argues that he did not willfully violate the order because: (1) he utilized an adult in his home to care for the children; (2) he did not notify Mother of the healthcare appointment because the appointment was with a

counselor as a result of an abuse allegation perpetrated by Mother; and (3) he was not required to notify Mother of the children's location.[8] Mother counters, in part, that the Indiana Parenting Time Guidelines required Father to provide travel information to Mother. *See* Ind. Parenting Time Guidelines, Section I(A)(6) ("For emergency notification purposes, whenever a child travels out of the area with either parent, one of the following shall be provided to the other parent: An itinerary of travel dates, destinations, and places where the child or the traveling parent can be reached, or the name and telephone number of an available third person who knows where the child or parent may be located.").

[38]     The trial court certainly had the discretion to find these actions constituted contempt. We will not, however, "require the trial court to find a party to be in contempt where, as here, the court has found that those actions fall short of necessitating contempt sanctions." *Van Wieren v. Van Wieren*, 858 N.E.2d 216, 223 (Ind. Ct. App. 2006). Given the numerous contempt petitions filed in this cause and the parties' apparent communication difficulties caused by both parties, we cannot say that the trial court abused its discretion by denying Mother's two contempt petitions.

---

[8] Father also argues that Mother dismisses her own misconduct. Father, however, does not appeal the denial of his petitions for contempt. Accordingly, we do not address this argument.

# Conclusion

[39] The trial court properly considered the GAL's reports. The trial court did not err by denying Mother's request for sole legal custody, modifying decision-making authority, and modifying Father's parenting time. The trial court further did not abuse its discretion by denying Mother's contempt petitions. We affirm.

[40] Affirmed.

Kirsch, J., and Pyle, J., concur.